**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 25 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CEDRIC D. SIMMS,

        Plaintiff - Appellant,

    v.

THE STATE OF OKLAHOMA,
ex. rel., The Department of
Mental Health and Substance Abuse
Services, a state agency,

        Defendant - Appellee.

No. 97-6366

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-96-2158-A)**

---

Ken Feagins, (Stanley M. Ward, with him on the briefs), Norman, Oklahoma,
appearing for Plaintiff-Appellant.

Penny Broughton McCracken, Deputy General Counsel (Craig Sutter, General
Counsel, on the answer brief), Department of Mental Health and Substance Abuse
Services, Oklahoma City, Oklahoma, appearing for Defendant-Appellee.

---

Before **TACHA**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

    Plaintiff-Appellant Cedric D. Simms appeals two orders of the district court

granting summary judgment in favor of defendant, the Oklahoma Department of Mental Health and Substance Abuse Services ("DMHSAS") on claims of unlawful employment discrimination and retaliation. On appeal, plaintiff argues that: (1) his pre-1995 retaliation claims are not time-barred and (2) the district court erred in granting summary judgment on his failure to promote claim because he presented sufficient evidence of pretext, creating a genuine dispute as to an issue of material fact. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

The procedural history of this case is somewhat complicated. Mr. Simms, an African-American, began his employment with defendant at Griffin Memorial Hospital around April 29, 1991, as a Fire and Safety Officer I. On September 11, 1991, defendant posted a job announcement for the position of Fire and Safety Officer II. Mr. Simms applied for the position, but defendant gave it to a white employee whom he thought was less qualified. Consequently, he filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 12, 1992 (No. 311930053), alleging that defendant refused to promote him because of his race. The EEOC issued a right-to-sue letter and, on December 21, 1993, Mr. Simms filed an action in federal court pursuant to Title VII of the Civil Rights Act ("Title VII"). The parties settled this action ("Simms I") on April 13, 1994. Under the settlement agreement, defendant promoted Mr. Simms to the position of

- 2 -

Fire and Safety Officer II. Although the court stated that DMHSAS should waive its standard six-month probationary period for plaintiff, defendant's employees Carol Kellison and Stand LaBoon withheld Mr. Simms' supervisory duties until June 20, 1994.

Ten days later, defendant posted a job announcement for the position of Fire and Safety Officer Supervisor. The job announcement stated that "PREFERENCE WILL BE GIVEN TO APPLICANTS WITH SUPERVISORY EXPERIENCE." Appellant's App. at 376. Mr. Simms applied and interviewed for the position. Mr. Simms and Bruce Valley, a white employee under Mr. Simms' supervision but who had numerous years of supervisory experience in the construction industry, received the highest scores in the first round of interviews. A panel including Carol Kellison and Stand LaBoon interviewed both men in a second round and ultimately gave the promotion to Mr. Valley. As a result, Mr. Simms filed a second EEOC charge (No. 311950136) on October 31, 1994, alleging that defendant unlawfully failed to promote him based on his race.

After filing the second EEOC charge, Mr. Simms' relationship with the defendant deteriorated. In March 1995, defendant reprimanded him for "distribution of unauthorized material" and, in April 1995, defendant suspended him for "insubordination, not devoting full time, attention and effort to the duties and responsibilities of position during assigned hours of duty, and failure or

inability to perform the duties in which employed." Appellant's App. at 83. On June 5, 1995, Mr. Simms filed a third EEOC charge (No. 311950898) alleging that these acts were in retaliation for filing and pursuing his second EEOC charge. On July 20, 1995, Mr. Simms received his first adverse job performance evaluation. Defendant demoted him to Fire and Safety Officer I on August 13, 1995, and ultimately terminated his employment on September 22, 1995.

On November 29, 1995, Mr. Simms received an EEOC right-to-sue letter regarding his third EEOC charge. He brought a Title VII action in federal court ("Simms II") on January 12, 1996, alleging race-based employment discrimination and retaliation, including allegations of retaliatory acts occurring prior to 1995 and not covered by his third EEOC charge. At the time he commenced Simms II, he had not yet received a right-to-sue letter for his second EEOC charge. On July 13, 1996, DMHSAS filed a motion for partial summary judgment on the grounds that Mr. Simms had failed to exhaust his administrative remedies as to his race discrimination and pre-1995 retaliation claims. Two days later, Mr. Simms filed an amendment to his second EEOC charge. The amendment contained allegations of pre-1995 acts of retaliation, including withholding of supervisory duties for the Fire and Safety Officer II position and failure to promote him to the Fire and Safety Supervisor position. On September 3, 1996, the district court granted defendant's motion for partial summary judgment, leaving only the post-1995

- 4 -

retaliation claims for trial.

The EEOC completed its investigation of the second EEOC charge on September 25, 1996, and issued a letter of determination stating that it found "reasonable cause to believe the charge is true." Appellant's App. at 274. A right-to-sue letter followed on October 2, 1996. Based on these events, plaintiff asked the district court to reconsider its September 3 Order in Simms II. The court denied Mr. Simms' motion for reconsideration on October 23, 1996. On December 31, 1996, plaintiff brought the present action ("Simms III") reasserting the claims that were dismissed in Simms II for failure to exhaust administrative remedies.

On January 6, 1997, Simms III was transferred to the district court judge presiding over Simms II, and plaintiff filed a motion to consolidate the two cases. The district court denied the motion because it would delay Simms II, which was set for trial in a week. The remaining claims in Simms II were tried to a jury. The jury found in favor of DMHSAS on the retaliatory discharge claim, but found against DMHSAS on the other post-1995 retaliation claims (the reprimand, suspension, negative performance evaluation, and demotion). On February 26, 1997, the trial court entered judgment in accordance with the jury's verdict.

On June 16, 1997, DMHSAS filed a motion for partial summary judgment in Simms III, claiming that Mr. Simms' pre-1995 retaliation claims were time-

barred and did not relate back to his original second EEOC charge. The trial court granted the motion on September 3, 1997, holding that Mr. Simms failed to exhaust administrative remedies. The district court found Mr. Simms' amendment to his second EEOC charge neither timely nor related to the activities contained in the original charge. On September 11, 1997, defendant filed a summary judgment motion with respect to plaintiff's remaining claims in Simms III. The court granted defendant's motion on October 23, 1997. The trial court denied plaintiff's motion for reconsideration of the two orders, and this appeal followed.

### Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Byers v. City of Albuquerque 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. See Byers, 150 F.3d at 174.

Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. See, e.g., Jenkins v.

Wood, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

## I. Pre-1995 Retaliation Claims - Exhaustion Doctrine

A plaintiff must generally exhaust his or her administrative remedies prior to pursuing a Title VII claim in federal court. See, e.g., Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), cert. denied, 118 S. Ct. 342 (1997). To be timely, a plaintiff must file the charge with the EEOC within 180 days or with a state agency within 300 days of the complained-of conduct. See 42

U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998); <u>Gunnell v. Utah Valley St. College</u>, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998). However, 29 C.F.R. § 1601.12(b) provides that certain amendments may relate back to the filing date of the original charge and, therefore, be considered timely even if the amendment takes place after the deadlines set forth in § 1601.13. To relate back, an amendment must (1) correct technical defects or omissions; (2) clarify or amplify allegations made in the original charge; or (3) add additional Title VII violations "related to or growing out of the subject matter of the original charge." <u>Id.</u> § 1601.12(b).

Mr. Simms argues that the 1996 amendment to his second EEOC charge complies with § 1601.12(b) and that his pre-1995 retaliation claims are therefore part of a timely-filed EEOC charge. For this to be true, the amendment must have either clarified or amplified allegations made in Mr. Simms' second EEOC charge or addressed matters that related to or grew out of the race discrimination claim in that charge.[1] We agree with the district court that the 1996 amendment did not clarify or amplify allegations in the second EEOC charge because the original charge, even when construed liberally, contained no mention of the theory of retaliation or facts supporting such a claim.

---

[1] Mr. Simms' amendments are not technical amendments (e.g., correcting a name or address), rather they go to the substance of the charge.

Whether the pre-1995 retaliation claims contained in the 1996 amendment related to or grew out of the race discrimination claim in the second EEOC charge is a closer question. Some courts have held that this language encompasses claims based on different legal theories that derive from the same set of operative facts included in the original charge. See Hornsby v. Conoco Inc., 777 F.2d 243, 247 (5th Cir. 1985); Washington v. Kroger Co., 671 F.2d 1072, 1075-76 (8th Cir. 1982); Alexander v. Precision Machining, Inc., 990 F. Supp. 1304, 1310 (D. Kan. 1997); Conroy v. Boston Edison Co., 758 F. Supp. 54, 58 (D. Mass. 1991); cf. Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 575 (7th Cir. 1998) (stating that disability discrimination claim would not relate back to age discrimination claim, but court might have been more sympathetic had plaintiff "alleged facts that supported both claims" in the first complaint).[2] Other courts have concluded that an amendment will not relate back when it advances a new theory of recovery, regardless of the facts included in the original complaint. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (denying relation back for age discrimination claim to sex discrimination claim); Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 675 (9th Cir. 1988) (same);

_____

[2] Some courts have gone further and held that an "amendment is said to grow out of the same subject matter as the initial charge where the protected categories are related, as is the case, for example, with race and national origin." Conroy, 758 F. Supp. at 58. That, however, is not the case here.

Hopkins v. Digital Equip. Corp., 1998 WL 702339, at *2 (S.D.N.Y. Oct. 8, 1998) (stating that retaliation and disability claims in amended charge did not relate back to date of original charge, which only alleged race discrimination, "even though those claims are based on incidents described in the original charge, since neither disability nor retaliation claims flow from race discrimination claims"). In Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998), this court followed the latter position, noting that when an original EEOC claim alleged only retaliation, plaintiff's amendment to add a sexual harassment claim did not relate back to the original charge pursuant to 29 C.F.R. § 1601.12(b). Applying the analysis from Gunnell, we hold that Mr. Simms' retaliation charge does not relate back under § 1601.12(b) because his 1996 amendment alleges a new theory of recovery, retaliation, that he did not raise in the second EEOC charge. Prohibiting late amendments that include entirely new theories of recovery furthers the goals of the statutory filing period -- giving the employer notice and providing opportunity for administrative investigation and conciliation. See Evans, 80 F.3d at 954; cf. Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994) (finding exhaustion is not required for a retaliation claim filed during the pendency of a discrimination claim and based on acts that occurred *after* the filing of the discrimination claim because the employer already has notice and there is little chance a second administrative complaint would lead

to conciliation).  Therefore, Mr. Simms' pre-1995 retaliation claims were not part of a timely-filed EEOC charge, and he has not exhausted his administrative remedies with respect to these claims.

Even though Mr. Simms did not properly exhaust administrative remedies, our inquiry as to whether this court may hear the retaliation claims has not come to an end.  This court has adopted a limited exception to the exhaustion rule for Title VII claims when the unexhausted claim is for "discrimination like or reasonably related to the allegations of the EEOC charge."  Ingels, 42 F.3d at 625 (quoting Brown v. Hartshorne Pub. Sch. Dist. No. 1, 864 F.2d 680, 682 (10th Cir. 1988)).  We have construed the "reasonably related" exception to include most retaliatory acts *subsequent* to an EEOC filing.  See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), cert. denied, 118 S. Ct. 342 (1997). "However, where a retaliatory act occurs *prior to the filing* of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge."  Id. (emphasis added); see also Hopkins, 1998 WL 702339, at *3.

In Seymore, the plaintiff filed a discrimination complaint with the state human rights commission and was subsequently discharged from her job.  She filed an EEOC complaint nine days after her termination which alleged race and sex discrimination.  In district court, though, plaintiff also alleged retaliation.

See Seymore, 111 F.3d at 796. This court found the plaintiff had failed to exhaust administrative remedies on the retaliation claim because she was aware of the facts constituting that claim at the time of her EEOC filing. See id. at 799-800. This case is analogous to Seymore. All of Mr. Simms' allegations of pre-1995 retaliation concerned facts occurring prior to the filing of the second EEOC complaint. Thus, Mr. Simms does not qualify for the "reasonably related" exception, and we may not excuse his failure to exhaust his administrative remedies with respect to his pre-1995 retaliation claims. We affirm the district court's grant of summary judgment in favor of defendant on these claims.[3]

## II. Race Discrimination Claim - Pretext Analysis

In determining whether to grant summary judgment on a Title VII claim, we apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the plaintiff initially bears the burden of production to establish a prima facie case of a Title VII violation. See McDonnell Douglas, 411 U.S. at 802. "To carry the initial burden of establishing a prima facie case of race discrimination for a failure to promote claim, the plaintiff must typically show that he or she (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position

---

[3]While plaintiff also included the post-1995 retaliation claims in his brief, he concedes that he is not attempting to relitigate these claims, upon which a jury passed judgment in Simms II.

remained open or was filled with a non-minority." Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1534 (10th Cir. 1995). Once a plaintiff has met this burden, discriminatory intent on the part of the defendant is presumed and the burden shifts to the defendant to "articulate a facially nondiscriminatory reason for the challenged employment action." Id. at 1533; see also Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998), cert. denied, -- S. Ct. --, 67 U.S.L.W. 2182 (Dec. 14, 1998). If the defendant provides a nondiscriminatory reason for the employment action, the plaintiff may defeat summary judgment by presenting sufficient evidence such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, "unworthy of belief." See Beaird, 145 F.3d at 1165 (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)). But cf. id. at 1176 (Tacha, J., concurring in part, dissenting in part) ("Not only must the plaintiff produce evidence of pretext, but the pretextual evidence must be of the nature or quality from which a reasonable jury could infer illegal discrimination."). Evidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria. See Colon-Sanchez v. Marsh, 733 F.2d 78, 81 (10th Cir. 1984); see also Beaird, 145 F.3d at

1168.

Plaintiff has made a prima facie showing of race-based discrimination. He was qualified for the position of Fire and Safety Officer Supervisor, but DMHSAS awarded the job to Mr. Valley, a non-minority. However, DMHSAS has advanced a nondiscriminatory reason for its decision to promote Mr. Valley over Mr. Simms: Mr. Valley was more qualified because he had significantly greater supervisory experience. Indeed, the record reflects that Mr. Valley's supervisory experience far exceeds that of Mr. Simms. Consequently, the issue becomes whether Mr. Simms has provided sufficient evidence that the reason advanced by DMHSAS is pretextual.

Mr. Simms offers a variety of evidence that he claims shows pretext. Although he does not directly attack the truthfulness of defendant's nondiscriminatory reason for promoting Mr. Valley (that Mr. Valley did not have more supervisory experience than Mr. Simms), Mr. Simms attempts to demonstrate that supervisory experience was not the true reason for the defendant's promotion decision. After careful review, we find that the evidence offered by Mr. Simms, even when taken in the light most favorable to plaintiff, is insufficient for a reasonable jury to conclude that defendant's proffered reason for failing to promote Mr. Simms is "unworthy of belief."

Mr. Simms claims that various "procedural irregularities" lead to an

- 14 -

inference of pretext.  The alleged irregularities include the decision to have a second round of interviews, testimony that the candidate with the highest first-round score is often selected for the job, the emphasis on supervisory experience in the job posting, and the fact that Stand LaBoon, the hospital superintendent, sat on the second round interview panel when he usually only interviews candidates for more senior positions.  However, these allegations of procedural irregularities do not support a reasonable inference of pretext because they are consistent with the defendant's published policies for selecting candidates for promotion.  For example, the job posting itself indicated a second round of interviews might be held, and this was consistent with DMHSAS policy.  Similarly, the fact that Simms scored slightly higher in the first round of interviews[4] does not show pretext, as the difference in scores is minimal and plaintiff provides no evidence showing DMHSAS has a policy of always hiring the candidate with the highest first-round score.  To the contrary, the difference between Mr. Simms' and Mr. Valley's scores provides an explanation for why an additional round of interviews was warranted.  The emphasis on supervisory experience in the job posting also raises no suspicions considering the job -- Fire and Safety Officer *Supervisor*.  Moreover, plaintiff has provided no evidence that the supervisory preference was

---

[4]Mr. Simms scored 1,866 out of 2,000, whereas Mr. Valley scored 1,835 out of 2,000, a 1.55% difference.

illegitimate or that it was unusual to include such a preference in a supervisor job posting. Cf. Randle, 69 F.3d at 453-54 (denying employer's summary judgment motion in a failure to promote claim because employer's assertion that plaintiff was unqualified for a position due to insufficient education was called into question by the fact that the person who got the job also did not meet the education requirement listed in the job posting); Mohammed v. Callaway, 698 F.2d 395, 399-401 (10th Cir. 1983) (reversing entry of judgment for employer where employer hired non-minority who did not meet specific job education requirements over minority candidate who was fully qualified). Finally, the fact that Stand LaBoon sat on the interview panel is not particularly troubling, since he retained ultimate hiring discretion for the position. Additionally, Mr. LaBoon ranked the two candidates equally in his evaluation, while the other two panel interviewers scored Mr. Valley higher. In sum, there is nothing about the defendant's actions in the interview process to support a reasonable inference of pretext.

Mr. Simms also argues that defendant based the decision not to promote him on subjective criteria. He claims that the fact that he scored higher than Mr. Valley in the first round of interviews is sufficient to show that factors other than supervisory experience were involved in and led to DMHSAS's promotion decision. We disagree. As mentioned earlier, even though plaintiff had the

highest score after the initial round of interviews, the small difference between Mr. Simms' and Mr. Valley's scores is insufficient to indicate illegitimate factors came into play in the second round of interviews. Cf. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1458 (10th Cir. 1994) (finding employer's selection of a younger employee who had a college degree for a position over an older employee who had a higher departmental ranking but no degree created no reasonable inference of pretext in an age discrimination suit where the stated reason for hiring the younger employee was his degree). Mr. Simms places great weight on the fact that he had greater education and training as a fireman, which he claims made him more objectively qualified for the job. However, an employee's "own opinions about his . . . qualifications [do not] give rise to a material factual dispute." Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996). While Mr. Simms may have had the edge in education and fire training, Mr. Valley had substantially greater supervisory experience. When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, "it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." Colon-Sanchez v. Marsh, 733 F.2d 78, 82 & n.1 (10th Cir. 1984); accord Lujan v. Walters, 813 F.2d 1051, 1057-58 (10th Cir. 1987).

In Colon-Sanchez, the first candidate had greater administrative and

supervisory skills while the second had greater mechanical skills. Since the job description at issue discussed significant administrative and supervisory responsibilities, we held that the employer's decision to hire the first candidate based on his administrative background raised no question of pretext. See Colon-Sanchez, 733 F.2d at 82. Similarly, DMHSAS's decision to hire Mr. Valley based on his supervisory experience is not the kind of subjective decision that, by itself, suggests pretext. See Beaird, 145 F.3d at 1169 (finding hiring decision based on employment performance grade over performance points, without more, "cannot reasonably be thought to evidence pretext"). Our role is to prevent unlawful hiring practices, not to act as a "super personnel department" that second guesses employers' business judgments. Verniero v. Air Force Academy Sch. Dist. No. 20, 705 F.2d 388, 390 (10th Cir. 1983); see also, e.g., Rabinovitz, 89 F.3d at 487.

Mr. Simms further asserts that defendant asked improperly subjective second round interview questions, thereby demonstrating pretext. However, he directs us to no questions that are unrelated to legitimate business considerations or blatantly subjective. Moreover, as we discussed above, he provides no evidence that he was so clearly better qualified than Mr. Valley that a jury could reasonably conclude that DMHSAS based its decision on something other than its proffered reason.

Mr. Simms also attempts to establish pretext by utilizing his employment

history with DMHSAS to impute a discriminatory motive on the part of defendant. For example, Mr. Simms suggests that Stand LaBoon and Carol Kellison, who prevented him from immediately assuming his supervisory duties as Fire and Safety Officer II in 1994, somehow manipulated the entire supervisor selection process so that he would not receive the promotion. However, we can find nothing in this record to indicate that Mr. LaBoon and Ms. Kellison's involvement in the interview process was so irregular or inconsistent with the defendant's established policies as to make its hiring explanation unworthy of belief. To the contrary, their conduct is consistent with DMHSAS's proffered nondiscriminatory reason for the promotion decision. While the fact that Mr. LaBoon and Ms. Kellison withheld Mr. Simms' supervisory duties is relevant, on this record, it is not enough to impute sinister motivations to them during the supervisor selection process.

Similarly, Mr. Simms attempts to establish pretext by reference to his prior settlement in Simms I, suggesting that because DMHSAS had settled a prior discrimination claim, its decision not to promote him to Fire and Safety Officer Supervisor was based on discriminatory motives rather than the reason proffered by defendant. Such a conclusive assertion is not probative of pretext unless the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand. Cf. Rea v. Martin Marietta Corp., 29 F.3d

- 19 -

1450, 1457 (10th Cir. 1994) (holding that isolated comments in an ADEA case must be linked to challenged employment action in order to show discriminatory animus); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994) (finding stray comments in ADEA case were insufficient to create triable issue of fact unless they were related to the challenged action). Mr. Simms fails to establish such a connection, for he does not link any of the parties involved in the current employment action, particularly Mr. LaBoon or Ms. Kellison, to the employment actions that were the subject of the Simms I litigation.

In addition, Mr. Simms attempts to establish pretext by alleging that he was disciplined for reading on the job, whereas white employees were not. That event occurred in April 1991, years before defendant made the promotion decision at issue in this case. Thus, it is also not sufficiently connected to the employment action in question to demonstrate pretext. See Rea, 29 F.3d at 1457; Cone, 14 F.3d at 531.

Finally, Mr. Simms makes much of the fact that the EEOC had issued a favorable letter of determination regarding his claim of race-based failure to promote, and that he had presented the letter to the district court. However, when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one. But see Mitchell v. Office of Los Angeles County Superintendent of Schs.,

805 F.2d 844, 847 (9th Cir. 1986) (stating that "an EEOC finding of reasonable cause is 'sufficient at least to create an issue of fact' requiring proceedings beyond the summary judgment stage" (quoting Gifford v. Atchison, Topeka, & Santa Fe Ry. Co., 685 F.2d 1149, 1156 (9th Cir. 1982)).

Even considering Mr. Simms' circumstantial evidence in its totality, as we must, see Beaird, 145 F.3d at 1174, plaintiff has provided insufficient evidence for a reasonable jury to conclude that defendant's proffered reason for not promoting Mr. Simms -- that Mr. Valley was more qualified -- was unworthy of belief. Consequently, plaintiff has failed to meet his burden of production and the district court appropriately granted summary judgment in favor of defendant on Mr. Simms' race discrimination claim.

## Conclusion

For the reasons discussed above, we conclude that the district court did not err in granting summary judgment in favor of the defendant in either its September 3 or October 23 Order. AFFIRMED.