**Reginal TONEY, Plaintiff,**

v.

**Andrew CUOMO, Secretary of the United States Department of Housing and Urban Development, Defendant.**

**Nos. 98–2478–JWL, 98–2479–JWL.**

United States District Court,
D. Kansas.

March 27, 2000.

Glenn S. Grayson, Wallace, Saunders, Austin, Brown & enochs, Chartered, Overland Park, KS, for Plaintiff.

Reginal C. Toney, Kansas City, KS, pro se.

Melanie D. Caro, Office of U.S. Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Reginal Toney filed suit against Andrew Cuomo, in his capacity as Secretary of the Department of Housing and Urban Development ("HUD"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claims that HUD, on two separate occasions, failed to promote him on the basis of his race. Plaintiff further claims that HUD retaliated against him after he filed an EEO complaint. This matter is presently before the court on defendant's motion for summary judgment (doc. # 41). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.[1]

---

1. Plaintiff filed two separate but identical pro se complaints against defendant. These complaints were assigned case numbers 98–2478– JWL and 98–2479–GTV, respectively. The cases were subsequently consolidated before the undersigned judge.

## I. Facts[2]

Plaintiff Reginal Toney was employed by the United States Department of Housing and Urban Development (HUD) from December 1979 until his retirement in September 1997. In 1995, HUD established the Voucher Processing Hub office (hereinafter "the Hub") in Kansas City, Kansas. The office was responsible for activities associated with subsidy billings for section 8 and other project-based multifamily rental assistance programs for the Kansas City office and selected offices nationwide. Kenneth Carpenter was the Director of the Hub. In that capacity, Mr. Carpenter was responsible for the management of the Hub and for the administrative and technical direction of the Hub.

One of Mr. Carpenter's primary duties in 1995 was to staff the Hub office, including hiring a Team Leader. According to defendant's undisputed evidence, the Team Leader was responsible for ensuring the integrity and financial viability of the voucher payment programs. Accordingly, the position required that the successful candidate be an expert in problem identification and resolution; be capable of addressing complex and controversial problems; assign work to staff members; and provide guidance and advice to staff members. Although plaintiff applied for this position, he was not selected; rather, Phyllis Angell was the successful candidate.[3]

Despite the fact that he was not chosen for the Team Leader position, plaintiff nonetheless was invited to transfer and, in fact, did transfer to the Hub as a Program Analyst.

In 1996, HUD began to increase the Hub's role in programming. As a result, Mr. Carpenter determined that the Hub needed another Team Leader in addition to Ms. Angell. Accordingly, in November 1996, HUD, through its Human Resources Division, announced a vacancy for the Program Analyst Team Leader position. Seven eligible candidates applied for the Team Leader position, including plaintiff. All seven candidates were considered for the position.[4] Gerald Hayes, Director of Housing in HUD's Kansas/Missouri State Office, was the individual responsible for conducting the Team Leader interviews or, at his discretion, for delegating the task to another manager. Mr. Hayes decided that Mr. Carpenter should conduct the interviews for the Team Leader position. Mr. Hayes also asked Mr. Carpenter to have Phyllis Angell assist him in the interview process.[5]

During each interview, Ms. Angell asked the candidates certain questions that had been written by Mr. Carpenter.[6] This format permitted Mr. Carpenter to make contemporaneous notes of the candidates' responses. At the conclusion of the interviews, Mr. Carpenter decided to recom-

---

**2.** In accordance with the applicable summary judgment standard, the facts are either uncontroverted or related in the light most favorable to plaintiff.

**3.** HUD's failure to promote plaintiff to the first Team Leader position is not challenged in this lawsuit.

**4.** Pursuant to the relevant bargaining agreement, HUD's Human Resources staff must review the applications of all candidates when there are less than 10 eligible applicants for a position. In reviewing the applicants, Human Resources must determine whether the eligible applicants are "best qualified" as indicated in the applications and the candidates' responses to certain Quality Ranking Factors. Only those applicants who are determined to be "best qualified" (*i.e.*, those

candidates who meet the objective qualifications for the position at issue) will be given consideration for the position. With respect to the Program Analyst Team Leader position, all seven candidates were determined to be "best qualified."

**5.** According to Mr. Hayes' testimony, he requested that Ms. Angell participate in the interview process for one significant reason—Mr. Carpenter was scheduled to retire in January 1997 and Mr. Hayes believed that Ms. Angell would be appointed Acting Director until a replacement was hired. Moreover, both Mr. Hayes and Mr. Carpenter testified that HUD had been encouraging the use of a two-person interview team.

**6.** All candidates were asked the same questions.

mend Linda McGrew for the Team Leader position. According to Mr. Carpenter, this decision was based on his knowledge of the candidates and his observations during the interview process. Mr. Carpenter further averred that he believed Ms. McGrew was the best candidate for the position because she had good communication skills; was capable of accepting responsibility; was able to work with the staff; and was innovative and creative regarding work that had to be done.

After the interviewing process was complete, Mr. Carpenter advised Mr. Hayes that he believed Ms. McGrew was the best candidate for the position because she had demonstrated the ability to accept responsibility and she had articulated innovative ideas regarding the work that had to be accomplished as a Team Leader in the Hub. Based on Mr. Carpenter's endorsement, Mr. Hayes, in turn, recommended Ms. McGrew for the Team Leader position to the Director of Management/Housing at HUD's headquarters. Headquarters ultimately approved the recommendation and Ms. McGrew was selected for the Team Leader position.

On January 15, 1997, plaintiff contacted his EEO officer regarding the Team Leader position. He filed an EEO complaint on February 20, 1997 alleging that he had been discriminated against on the basis of his race when HUD management did not select him for the Program Analyst Team Leader position. During this same time frame Mr. Carpenter retired from the Director position and HUD began advertising nationwide the position vacancy in an effort to find the best candidate to assume the leadership of the Hub. HUD received many applications for the position, including an application from plaintiff. A panel of HUD employees was convened to review the applications and identify the best qualified candidates for the Director position. The panel subsequently named eight candidates on its roster of best-qualified candidates, including plaintiff.

On February 27, 1997, HUD interviewed the candidates. Specifically, interviews were conducted by Gerald Hayes and Robert Ratcliffe, Director of HUD's Multifamily Housing Programs Office in Washington, D.C. According to Mr. Hayes, he and Mr. Ratcliffe asked each applicant the same four or five standard questions and made notes of the replies. For each question, answers were ranked and, after each interview, Mssrs. Hayes and Ratcliffe arrived at an overall "score" for the candidate. Mr. Hayes averred that two candidates, Andy Miller and Steve Burgess, had the highest scores at the conclusion of the interviews and, in fact, these candidates had "tied" in points. Mr. Ratcliffe then submitted the scores to Cheryl Owens, Acting Director of HUD's Office of Management.

Mr. Ratcliffe advised Ms. Owens that Mr. Burgess and Mr. Miller had received the highest scores after the interview process. According to Ms. Owens, Mr. Ratcliffe recommended Mr. Burgess for the Director position. Ms. Owens averred that Mr. Ratcliffe expressed to her his belief that Mr. Burgess was the best applicant because Mr. Burgess had been involved in the structuring of the Kansas City, Kansas Voucher Processing Hub office; had been instrumental in the development and monitoring of program policy, management systems and the training of staff; was aware of the Departmental direction for the Hub; and was a program expert in the Section 8 program. Indeed, Mr. Burgess averred that, prior to his selection for the Director position, he was the Director of the TRACS system[7] at HUD's headquarters in Washington, D.C. and served as team Leader of the Headquarters Task Force responsible for the design and implementation of the Voucher Processing Hub in Kansas City, Kansas.

7. The TRACS system refers to HUD's "Tenant Rental Assistance Certification System," a procedure through which proper financial controls are applied to the voucher review process. This system was utilized at the Hub in Kansas City, Kansas.

Mr. Ratcliffe's recommendation was ultimately approved by a host of people, including the Deputy Assistant Secretary for Housing, the Assistant Secretary for Housing/ Federal Housing Commissioner, and the Deputy Secretary of HUD.

In October 1998, after exhausting his administrative remedies and complying with administrative prerequisites, plaintiff filed his complaint. In it, plaintiff maintains that HUD failed to promote him to the Team Leader position and the Director position based on his race, African–American. He further contends that Mr. Hayes did not select him for the Director position based on his filing an EEO complaint with respect to the Team Leader position. Defendant moves for summary judgment on all of plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather,

the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Plaintiff's Discriminatory Failure-to-Promote Claims

Plaintiff claims that HUD failed to promote him to the Team Leader and Director positions based on his race in violation of Title VII. In his motion for summary judgment, defendant maintains that summary judgment is appropriate because plaintiff has failed to raise an inference of pretext with respect to the promotion decisions made. As set forth in more detail below, the court agrees with defendant and concludes that plaintiff has failed to meet his burden of showing the existence of a genuine dispute of material fact as to whether HUD's articulated reasons for its pro-

motion decisions are unworthy of belief. Defendant's motion for summary judgment on plaintiff's discriminatory failure-to-promote claims is granted.

The court analyzes plaintiff's discriminatory failure-to-promote claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.,* 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

To establish a prima facie case in the failure-to-promote context, plaintiff must show that he belongs to a minority group; that he was qualified for the promotion; that he was not promoted; and that the position remained open or was filled by someone else. *See Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir.2000) (citations omitted); *Perry v. Woodward,* 199 F.3d 1126, 1140–41 (10th Cir.1999), *petition for cert. filed,* 68 U.S.L.W. 3614 (U.S. Mar. 16, 2000) (No. 99–1527); *Simms v. Oklahoma ex rel.*

*Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1328 (10th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). For purposes of its motion, defendant concedes that plaintiff has adequately established his prima facie case.

The burden then shifts to HUD to produce evidence of a legitimate nondiscriminatory reason for its employment decisions. According to HUD's evidence, Linda McGrew was hired for the Team Leader position based on Mr. Carpenter's recommendation. Mr. Carpenter testified to his belief that Ms. McGrew was the best candidate for the Team Leader position in light of her communication skills; her ability to accept responsibility; her ability to work with the Hub staff; and her innovative and creative ideas. Similarly, HUD maintains that Steve Burgess was hired for the Director position based on Mr. Ratcliffe's recommendation. Along those lines, Ms. Owens averred that Mr. Ratcliffe expressed to her his belief that Mr. Burgess was the best applicant because Mr. Burgess, among other things, had been involved in the structuring of the Hub office and had been instrumental in the development and monitoring of program policy, management systems and the training of staff. HUD has satisfied its "exceedingly light" burden to produce evidence of a legitimate nondiscriminatory reason for its promotion decisions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 50, 145 L.Ed.2d 44 (1999).

For his claim to survive summary judgment, then, plaintiff must show that there is a genuine issue of material fact as to whether HUD's proffered reasons are a mere pretext for discrimination. As the Tenth Circuit has consistently emphasized, a plaintiff may show pretext by demonstrating "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See, e.g., Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id.* (citing *Morgan,* 108 F.3d at 1323).

■ The court first addresses plaintiff's pretext evidence with respect to the Team Leader position. In an effort to demonstrate that HUD's proffered explanation for this promotion decision is pretextual, plaintiff first highlights the allegedly "suspicious" circumstances surrounding Mr. Carpenter's selection of Phyllis Angell, a white female, as the first Team Leader in the Hub.[8] According to plaintiff, Mr. Carpenter selected Ms. Angell for the job despite the fact that she was not qualified for the position because Mr. Carpenter wanted to protect Ms. Angell from losing her job. Apparently, Ms. Angell had been employed with HUD as a "term" employee rather than a "permanent" employee. A term employee is hired for a specific term of employment and is then released. A permanent employee, on the other hand, is not hired for a specific term and, as a result, has greater job security in the civil service system. Although not entirely clear, plaintiff's theory seems to be that Mr. Carpenter selected Ms. Angell (over plaintiff, who was allegedly more qualified) so that Ms. Angell could become a permanent employee and obtain greater job security. Even assuming these facts are true, they do not demonstrate that Mr.

Carpenter's decisionmaking with respect to the second Team Leader position was motivated by race. These facts demonstrate only that Mr. Carpenter was motivated by his desire to help Ms. Angell become a permanent employee and thereby attain more job security. There is no indication (and, indeed, plaintiff does not even suggest) that Mr. Carpenter selected Ms. Angell because of her race or, stated another way, that Mr. Carpenter failed to select plaintiff because of his race. In sum, the mere fact that Mr. Carpenter selected Ms. Angell for the position in order to secure a "permanent" employment status for Ms. Angell does not show that Mr. Carpenter's explanation for his promotion decision is pretextual.

■ Next, plaintiff urges that he was more qualified for the Team Leader position than Ms. McGrew. In essence, plaintiff avers that he had more knowledge of and experience in public housing issues and the TRACS system than Ms. McGrew. This evidence is insufficient to create a jury issue. As the Tenth Circuit has repeatedly emphasized, a plaintiff's own opinions about his qualifications do not give rise to a material factual dispute. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317–18 (10th Cir.1999); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1329 (10th Cir.1999). Moreover, even if HUD or Mr. Carpenter misjudged the qualifications of the candidates for the Team Leader position, such evidence would not preclude summary judgment on this claim. The relevant inquiry is not whether HUD's reason for its decision (or Mr. Carpenter's reason for his recommendation) was "wise, fair or correct," but whether HUD and Mr. Carpenter "honestly believed those reasons and

---

8. Although HUD's failure to promote plaintiff to the first Team Leader position is not a part of plaintiff's lawsuit, plaintiff nonetheless contends that the "facts surrounding [that decision] shed light on the motivation of the Defendant" with respect to the second Team Leader promotion decision.

acted in good faith upon those beliefs." *See Bullington,* 186 F.3d at 1318 (citations omitted). Plaintiff presents no evidence indicating that HUD did not believe Mr. Carpenter's assessment of the candidates' qualifications and a review of the record reveals no evidence that HUD failed to act in good faith in reliance on those assessments. Similarly, plaintiff presents no evidence suggesting that Mr. Carpenter did not genuinely perceive Ms. McGrew as a more qualified candidate than plaintiff. Under these circumstances, the court discerns no showing of pretext.

■ In the same vein, plaintiff challenges Mr. Carpenter's use of subjective factors (*e.g.,* ability to communicate; creativity; innovation) in the evaluation process. As an initial matter, the Circuit has aptly recognized that subjective factors often play a legitimate role in the hiring process and, thus, the use of such factors does not per se constitute discrimination. *See Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1272 (10th Cir.1988). Rather, "the use of subjective factors supports an inference of pretext when an employer justifies rejection of a minority candidate on the basis of such factors even though the minority is objectively better qualified than the nonminority chosen." *See Mohammed v. Callaway,* 698 F.2d 395, 401 (10th Cir. 1983). It is undisputed here that plaintiff and Ms. McGrew both possessed the objective qualifications for the Team Leader position. Both candidates appeared on Human Resources' list of "best qualified" candidates. Moreover, there is no evidence suggesting that either candidate was "clearly better qualified" than the other. In such circumstances, it is within the employer's discretion to choose among them so long as the decision is not based on "unlawful criteria." *See Simms,* 165 F.3d at 1329–30. In sum, in the absence of any other evidence suggesting that Mr. Carpenter's proffered explanation for his selection of Ms. McGrew is unworthy of

credence or that the decision was motivated by race, the mere fact that Mr. Carpenter ultimately relied on subjective factors in making the promotion decision is insufficient to support an inference of pretext.

■ Plaintiff's only remaining argument with respect to the Team Leader is that the interview process itself was unusual in that Ms. Angell, a Team Leader herself, was allowed to sit in on the interviews. Title VII, however, does not afford plaintiff a flawless or even a fair interview process—it simply precludes HUD from making an adverse promotion decision based, even in part, on plaintiff's race. Thus, even though HUD may have deviated from its standard interview procedures by allowing Ms. Angell to participate in the interview process with Mr. Carpenter, this evidence, standing alone, does not permit an inference that plaintiff's race was a motivating factor in the promotion decision. Such evidence "goes only to process and not to purpose or motivation," and could not provide a sufficient basis for a jury to find pretext for discrimination. *See Ingels v. Thiokol Corp.,* 42 F.3d 616, 623 (10th Cir.1994); *accord Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir.1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). Significantly, it is undisputed that Ms. Angell participated in the interviews of all candidates for the Team Leader position. It is further undisputed that Mr. Hayes asked Ms. Angell to participate based on his belief that she would become the Acting Director upon Mr. Carpenter's retirement and because HUD had been encouraging the use of a two-person interview team. Finally, there is no evidence in the record that Ms. Angell harbored any racial animus toward plaintiff specifically or African–Americans

in general. In light of these circumstances, there is nothing about HUD's actions in the interview process to support a reasonable inference of pretext. *See Simms*, 165 F.3d at 1329 (fact that hospital superintendent sat on interview panel when he usually only interviewed candidates for more senior positions did not support an inference of pretext under circumstances).[9]

The court now turns to address plaintiff's pretext evidence with respect to the Director position. In support of his pretext argument, plaintiff asserts only that he was more qualified for the Director position than Mr. Burgess. Specifically, plaintiff maintains that he "knew all of the people in the office and was able to work well with them" as opposed to Mr. Burgess who, according to plaintiff, "was from Washington, D.C. and did not know the people in the Kansas City office." Plaintiff also highlights his substantial experience with the TRACS system and the voucher payment program. Finally, plaintiff contends that he had significant knowledge about the "projected growth and direction" of the Hub program. In essence, plaintiff claims that he was simply the best candidate for the Director position.

■ This evidence, even when taken in the light most favorable to plaintiff, is insufficient for a reasonable jury to conclude that HUD's proffered reason for failing to promote plaintiff to the Director position is "unworthy of belief." As set forth above in connection with the Team Leader position, the Tenth Circuit has emphasized time and again that a plaintiff's own opinions about his qualifications do not give rise to a material factual dispute. *See Bullington v. United Air Lines, Inc.,*

186 F.3d 1301, 1317–18 (10th Cir.1999); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1329 (10th Cir.1999). Again, as the court explained above, even if HUD or Mr. Ratcliffe misjudged the qualifications of the candidates for the Director position, such evidence would still not preclude summary judgment in this case. Plaintiff has failed to present any evidence that HUD did not believe Mr. Ratcliffe's assessment of the candidates' qualifications or that HUD failed to act in good faith in reliance on those assessments. Similarly, plaintiff has failed to present any evidence suggesting that Mr. Ratcliffe did not genuinely perceive Mr. Burgess as a more qualified candidate than plaintiff. Under these circumstances, no reasonable jury could draw an inference of discrimination. As the Tenth Circuit has recently reiterated, the court's role is "to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms,* 165 F.3d at 1329 (citations omitted).

In sum, plaintiff has not come forward with sufficient evidence from which a reasonable factfinder could draw an inference that HUD's proffered reasons for failing to promote plaintiff are unworthy of belief or that plaintiff's race was a motivating factor in HUD's promotion decisions. Defendant's motion for summary judgment is granted with respect to plaintiff's discriminatory failure-to-promote claims.

## IV. Plaintiff's Retaliation Claims

Plaintiff also asserts two retaliation claims. First, plaintiff claims that HUD, after receiving plaintiff's EEO complaint, retaliated against him by fail-

---

9. Plaintiff also asserts that allegedly contradictory evidence about the nature and extent of Ms. Angell's involvement in the interview process warrants an inference of pretext. Even assuming that the evidence concerning the extent of Ms. Angell's involvement in the process is contradictory, the court nonetheless discerns no pretext because, as set forth above, Ms. Angell's participation in the interviews—regardless of the extent of that participation—is insufficient to create a jury issue.

ing to promote him to the Director position. Second, plaintiff claims that HUD, in retaliation for plaintiff's filing his EEO complaint, lost the Report of Investigation (ROI) with respect to plaintiff's complaint. In support of his motion for summary judgment, defendant contends that plaintiff's retaliation claims fail because he has not shown a causal connection between the filing of his complaint and the challenged actions. With respect to plaintiff's retaliatory failure-to-promote claim, defendant further maintains that plaintiff has not shown that HUD's proffered nonretaliatory reason for the promotion decision is pretextual. As set forth below, the court concludes that summary judgment in favor of defendant is appropriate on both claims. Specifically, the court concludes that plaintiff has failed to establish the requisite causal connection for either claim. Moreover, with respect to plaintiff's retaliatory failure-to-promote claim, plaintiff has failed to show the existence of a material factual dispute as to whether HUD's proffered reasons for its actions are a mere pretext for retaliation.

■ As with plaintiff's discrimination claims, the court analyzes plaintiff's retaliation claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McGarry v. Board of County Com'rs*, 175 F.3d 1193, 1201 (10th Cir.1999); *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1243 (10th Cir.1999) (citing *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549–50 (10th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 48, 145 L.Ed.2d 42 (1999)). To establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate that (1) he engaged in protected activity; (2) he suffered an adverse employment action by his employer either after or contemporaneous with her pro-

tected activity; and (3) a causal connection exists between his protected activity and the adverse employment action. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n. 12 (10th Cir.1999) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 (10th Cir.1998)); *McGarry*, 175 F.3d at 1201. Once plaintiff establishes his prima facie case, the burden shifts to HUD to offer a legitimate nonretaliatory reason for its actions. *See McGarry*, 175 F.3d at 1201. If HUD comes forward with a legitimate nonretaliatory reason for its actions, then the burden reverts to plaintiff to show that there is a genuine dispute of material fact as to whether HUD's proffered reason for the challenged action is pretextual. *See id.*

■ The court first addresses plaintiff's retaliatory failure-to-promote claim. According to defendant, plaintiff cannot satisfy the causation element of his prima facie case for this claim because plaintiff has failed to come forward with any evidence that any of the decisionmakers knew plaintiff had filed an EEO complaint at the time HUD made its promotion decision. The court agrees. In his response, plaintiff asserts only that Mr. Hayes knew about his protected activity. Plaintiff, however, fails to support this assertion with competent Rule 56(e) evidence. *See* Fed. R.Civ.P. 56(e); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998) (in summary judgment context, facts "from which a rational trier of fact could find for the nonmovant ... must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"). He directs the court only to plaintiff's Exhibit F—a document that appears to be a memorandum written by an EEO investigator which summarizes the investigator's findings with respect to plaintiff's complaint. The memorandum suggests that the investigator discussed plaintiff's complaint with Mr. Hayes prior to the time the promotion decision was

made. Nonetheless, the court cannot consider this document as plaintiff has failed to authenticate the document through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit. *See* Fed.R.Civ.P. 56(c) & (e); D.Kan.Rule 56.1. Mr. Hayes, moreover, averred that he had no knowledge of plaintiff's complaint until March 1997—after the promotion decision was made. Thus, in the absence of any competent evidence that any of the relevant decisionmakers had knowledge of plaintiff's protected activity, plaintiff cannot establish a prima facie case of retaliation and summary judgment in favor of defendant is warranted. *See Sanchez v. Denver Public Schools,* 164 F.3d 527, 534 (10th Cir.1998) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew that plaintiff had filed charge of discrimination); *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993) (same).[10]

 The court turns, then, to plaintiff's claim that HUD lost his EEO file in retaliation for his filing the EEO complaint. By way of background, the investigation of all EEO complaints received by HUD was contracted out to private firms. Firms were selected by the General Service Administration (GSA), which had a procedure for soliciting proposals and determining the eligibility of contractors. GSA certified Grant Communications, Inc. ("Grant") as the contractor for all areas west of the Mississippi River. Thus, HUD secured the services of Grant to investigate plaintiff's complaint and to complete a Report of Investigation (ROI) regarding his complaint. Grant completed the investigation and the ROI in October 1997. At that time, the ROI was sent to HUD's Equal Employment Opportunity Division (EEOD). Upon receiving the ROI, the EEOD determined that additional information was needed. The EEOD thus requested that Grant perform a supplemental investigation. Consistent with that request, the EEOD returned the original and all copies of the ROI to Grant so that the ROI could be supplemented with the additional information. At some point thereafter, the EEOD contacted Grant about the status of the supplemental investigation. Grant advised the EEOD that it had no record of receiving the returned ROI. Despite several attempts to locate the ROI, it was never found. The EEOD then secured the services of Counter Technology, Inc. to conduct another investigation and ROI. This investigation was completed in June 1998 and the ROI was forwarded to the EEOD at that time.

Defendant maintains that summary judgment is appropriate on this claim because plaintiff has shown no causal connection between his filing the complaint and HUD's alleged loss of the ROI.[11] The court agrees. Significantly, plaintiff has presented no evidence whatsoever that HUD intentionally lost the initial ROI or that HUD was even responsible for the lost ROI. In addition, plaintiff has provided no evidence or insight concerning what

---

10. Even assuming plaintiff could establish a prima facie case of retaliation with respect to the Director position, summary judgment would nonetheless be appropriate. As set forth above in connection with plaintiff's discriminatory failure-to-promote claim, plaintiff has failed to show that HUD's proffered explanation for this promotion decision is pretextual.

11. As an initial matter, the court questions whether this type of action constitutes an "ad-

verse action" for purposes of plaintiff's prima facie case. According to plaintiff, the action was adverse because the loss of the ROI "greatly hampered plaintiff's efforts to reveal discrimination in the Hub." Specifically, plaintiff highlights the loss of relevant documents and the waste of valuable time. In any event, defendant has not challenged plaintiff's claim on this ground and, thus, the court need not address it.

HUD's motivation might be for losing the ROI. Finally, the record contains no evidence that anyone in the EEOD (the division that purportedly lost the ROI) was upset or angry that plaintiff had filed a complaint. In sum, there is simply no evidence in the record from which a jury could reasonably conclude that HUD lost the initial ROI in retaliation for plaintiff's filing an EEO complaint. Accordingly, summary judgment on this claim is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 41) is **granted** and plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**