**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 22 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIE C. VOLTZ,

      Plaintiff-Appellant,

v.

COCA-COLA ENTERPRISES INC.,
d/b/a DENVER COCA-COLA
BOTTLING COMPANY,

      Defendant-Appellee.

No. 02-1010
(D.C. No. 00-D-1008)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR, HOLLOWAY** and **EBEL**, Circuit Judges.

This is an appeal from an order by the district court granting summary judgment

for Defendant, Coca-Cola Enterprises, Inc. doing business as Denver Coca-Cola Bottling

Company (collectively "Coca-Cola") on Plaintiff's, Willie Voltz's, claim that he was

denied promotions because of his race, African American, in violation of Title VII of the

Civil Rights Act of 1964. On appeal, Voltz argues the record contains sufficient evidence

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

from which a reasonable factfinder could conclude that Coca-Cola engaged in unlawful discrimination in denying Voltz a promotion so that the summary judgment was error. For reasons detailed below we do not accept this argument and, therefore, affirm the district court's summary judgment on Voltz's disparate impact and disparate treatment claims.

**I**

A

Coca-Cola hired Voltz, who is African American, in October of 1988 for an entry level position as Merchandiser in its Denver, Colorado facility. Appellant App. at 2, 8. Approximately two years later, in 1990, Voltz was reassigned as a "Service Technician" in the Cooler Service Department. *Id.* As a Service Technician, Voltz performed a number of non-supervisory jobs in a department responsible for the installation and maintenance of vending and fountain drink equipment at customer stores. *Id.* at 47-48. According to Voltz's deposition, his responsibilities as a Service Technician included "premix account," "setting up vendors in the shop," "placing vendors," "training people to do premix," and "training people to place vendors and accounts." *Id.*

In 1993, Voltz spoke with his supervisor about a possible promotion to "Cooler Service Supervisor." Appellant's Appendix at 51-52. In 1995, Coca-Cola posted an announcement indicating an open position for a Cooler Service Supervisor. Voltz

expressed interest in but did not apply for this position, which was eventually filled by Mark Rients. *Id.* at 3, 77-78. In 1996, Coca-Cola again posted a vacancy announcement for a Cooler Service Supervisor, and, this time, Voltz alleges that he applied for the position. *Id.* at 3.

According to Ronald Paxton, a Division Human Resources Director, Coca-Cola does not maintain a written promotion procedure and instead, "access [sic] candidates, both internally and externally, and through a selection process, which includes an applicant review and an interview process, [] select[s] the candidate that has the best qualifications and fit for the position." *Id.* at 62. Paxton further explained that Coca-Cola has a practice of preferring promoting from within the company. *Id.* at 141.

In assessing candidates for the Cooler Service Supervisor position, the most important qualification was, according to Paxton, supervisory experience. *Id.* at 62, 81. Voltz was qualified for the position of Cooler Service Supervisor, *id.* at 154, and received ten years' worth of satisfactory evaluations as a Cooler Technician, *id.* at 157. Voltz's supervisory experience, however, was limited to two years as a Mail Room Supervisor at United Bank, a job from which he was terminated for inappropriate behavior. *Id*. at 46.

According to Voltz, he was interviewed for the 1996 Cooler Service Supervisor position but did not receive the job. Instead, Voltz claims he was told by his supervisor, Rients, that he would be the "lead person" in his department. Appellant App. at 48. Meanwhile, the Cooler Service Supervisor position was filled by Dan Hamilton, who is

not African American. *Id.* at 94. At the time of his promotion, Hamilton was employed by Coca-Cola in a non-supervisory entry-level position in merchandising but had several years of supervisory experience with Coca-Cola when he was a Conventional Route Supervisor for several years in the 1980's. *Id.*

In 1998, Coca-Cola posted yet another vacancy announcement for a Cooler Service Supervisor. *Id.* at 56. Voltz applied for this position and was interviewed but did not receive the job. *Id.* at 91. According to Shelly Schmitz, an Employee Relations Manager who interviewed Voltz, Voltz was not selected for the position because "[h]e was too laid back . . . you expect people to be more eager to interview and he didn't portray that." This vacancy was eventually filled by Alan Toth, who is not African American. *Id.* at 4. Toth had several years of supervisory experience as a Vending Repair Supervisor for Coca-Cola from 1981-1988 and as a Shop Supervisor for Action Enterprises from 1988-1990. *Id.* at 101.

B

On March 5, 1999, Voltz filed a charge of discrimination against Coca-Cola with the United States Equal Opportunity Commission ("EEOC"), alleging that he was not promoted because of his race. The EEOC found no merit to Voltz's claim and, on February 24, 2000, sent Voltz a dismissal and a notice of a right to sue. *Id.* Voltz then filed this suit seeking recovery against Coca-Cola under disparate treatment and disparate impact theories of racial discrimination in violation of the Civil Rights Act of 1964.

Voltz alleged Coca-Cola did not promote him in 1996 and 1998 to the position of Cooler Service Supervisor because of his race in violation of Title VII.[1] Looking first to Voltz's disparate treatment claim and applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1978), burden shifting framework, the district court granted Coca-Cola summary judgment on grounds that, while Voltz had established a prima facie case of discrimination, he had not rebutted Coca-Cola's non-discriminatory reason for not promoting him–that he was not the most qualified candidate. The district court also granted the summary judgment on Voltz's disparate impact claim on grounds that Voltz

---

[1]Voltz also pled other Title VII claims arising from his failure to be promoted in 1993 and 1995. Appellant App. at 2-4. These claims were dismissed by the district court on grounds that Voltz had not established a prima facie case (Voltz never applied for the promotion on those occasions) and that claims arising from those incidents were barred by Voltz's failure to timely seek administrative remedies. Voltz does not now appeal either of these rulings.

The district court also construed Voltz's pleadings as including a wage loss claim which it then dismissed on grounds that Voltz failed to establish a prima facie case. Voltz does not appeal this issue in his opening brief, Appellant Opening Br. at 33, and instead saves it for his reply brief where he inexplicably attempts to incorporate by reference Defendant Coca-Cola's argument. Appellant Reply Br. at 14. An issue not raised in the opening appellate brief is waived. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). Therefore, Voltz has waived this issue. Further, Fed. R. App. P. 28(a)(6) prohibits the incorporation of arguments by reference. Therefore, even if Voltz's argument was contained in his opening brief, appellate review would still not be appropriate. Finally, even if we overlook Voltz's failure to appeal his wage loss claim in his opening brief and his attempt to incorporate arguments by reference, his appeal would still fail because he references arguments that state grounds for affirming, rather then reversing the district court–as would be expected of arguments made by the defendant. Appellee Response Br. at 29-32.

Therefore, in this appeal, we consider only the propriety of the district court's grant of summary judgment for Coca-Cola on Voltz's disparate treatment and disparate impact claims arising from his failure to be promoted in 1996 and 1998.

failed to identify a specific employment practice or policy that had a disparate impact on minorities. Voltz now appeals both these rulings.

## II

A grant of summary judgment by the district court is reviewed *de novo*. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

For reasons discussed below, we find that the evidence and reasonable inferences drawn therefrom, when viewed in the light most favorable to Voltz, entitle Coca-Cola to summary judgment on both the disparate treatment and disparate impact claims. Therefore, the district court's decision will be affirmed.

### A

### *Disparate Treatment*

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A

Title VII claim of an unlawful employment discrimination can be proven through either

direct (e.g., a written or oral statement by the defendant of discriminatory motive) or

circumstantial evidence. *Kendrick*, 220 F.3d 1220, 1225 (10th Cir. 2000) (citing *Shorter*

*v. ICG Holdings, Inc.*, 188 F.3d, 1203, 1207 (10th Cir. 1999) and *Elmore v. Capstan, Inc.,*

58 F.3d 525, 529 (10th Cir. 1995)). Such a claim can survive summary judgment only

where the plaintiff has presented sufficient evidence as to show there is a genuine issue of

material fact pertaining to whether the plaintiff's race actually motivated the allegedly

discriminatory conduct. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141

(2000); Fed. R. Civ. P. 56(c). In determining whether the circumstantial evidence

presented by the plaintiff in a given case is sufficient to establish a genuine issue of

material fact, the Supreme Court has directed the application of the burden-shifting

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05

(1973).[2]

The McDonnell Douglas framework comprises three burden shifting steps.

Initially, the burden rests with the plaintiff to establish a prima facie case of racial

---

[2]The McDonnell Douglas burden shifting framework is applicable only in considering summary judgment. *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991) (holding that once there has been a full trial on the merits, the *McDonnell Douglas* framework "drops out" and there remains only a "single overarching issue" of whether the "adverse employment action was taken against" the plaintiff because of his or her protected status).

discrimination. *Id.* at 802. If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action. *Id.* Finally, if the defendant articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to show the proffered reason is merely a pretext for racial discrimination. *Id.* at 804. Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate. *Reeves*, 530 U.S. at 148.

In this case, Voltz relied upon circumstantial evidence to prove his claim of discrimination under Title VII which was dismissed by the district court on summary judgment. The district court based its decision upon its determination that Voltz could not show that Coca-Cola's proffered nondiscriminatory justification for not promoting him was a pretext and, therefore, did not satisfy his burden under the third step of the *McDonnell Douglas* framework. On appeal, Voltz argues that he presented sufficient evidence to show Coca-Cola's proffered nondiscriminatory justification was a pretext and, therefore, that the district court should be reversed. We disagree.[3]

---

[3]Coca-Cola submitted a letter under Fed. R. App. P. 28(j) that argued Voltz's 1996 claim is barred by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), as untimely. Coca-Cola raised this issue in its motion for summary judgment in the district court, though without citation to this particular case, but did not raise this issue in its reply brief. This is a clear abuse of Fed. R. App. P. 28(j).

That rule permits a party to submit *supplemental* authorities that relate to a point raised either in the parties' briefs or at oral argument. To that end, the rule requires reference to either "the page of the brief or to a point argued orally." Fed. R. App. P. 28(j). In this case, we should not allow Coca-Cola to introduce a *new* argument under

1

*Prima facie case of discrimination*

The first step of the McDonnell Douglas framework places the burden on the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff can meet this burden by advancing sufficient evidence to establish four elements: (1) the plaintiff belongs to a protected class; (2) the plaintiff "applied and was qualified for a job for which the employer was seeking applicants"; (3) the plaintiff did not receive the position; and (4) the position was not eliminated.[4] *Id.*; *Reeves*, 220 F.3d at 1228.

In this case, it is uncontested that Voltz has established a prima facie case of discrimination. The first element is satisfied since Voltz is an African American and therefore a member of a protected class. Both parts of the second element are also satisfied since all parties agree that Voltz was qualified for and did apply for a promotion to Cooler Service Supervisor in 1996 and 1998. Appellant App. at 9, 10 (admission of

the guise of supplying "supplemental" authority and, in so doing, to circumvent the rule that an argument not raised in a party's opening brief is waived on appeal. *State Farm Fire*, 31 F.3d at 984 n.7. Therefore, we will consider this argument waived.

[4]The fourth element, as stated in *McDonnell Douglas*, was that the "position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." 411 U.S. at 802. However, *McDonnell Douglas* also noted that the "facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13.

Coca-Cola that Voltz applied for the position in 1996 and 1998); *Id.* at 129 (admission of Coca-Cola that Voltz was qualified for the position of Cooler Service Supervisor). Finally, the third and fourth elements are satisfied since the 1996 and 1998 Cooler Service Supervisor positions were filled by Dan Hamilton and Alan Toth, both Caucasions, respectively. *Id.* at 9-10. Therefore, Voltz has satisfied his initial burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework.

2

*Nondiscriminatory reason for the challenged employment action*

The second step of the *McDonnell Douglas* framework shifts the burden to the defendant to articulate a non-discriminatory reason for the challenged employment decision. *McDonnell Douglas*, 411 U.S. at 802. Here, Coca-Cola asserts Voltz was not promoted to Cooler Service Supervisor in either 1996 or 1998 because he was not the most qualified candidate for the job.

Coca-Cola asserts it utilized its established procedure for filling supervisory positions in filling the Cooler Service Supervisor positions in 1996 and 1998: it required candidates to fill out an application form and undergo an interview. Appellant App. at 62 (Paxton deposition). In assessing candidates, Coca-Cola claims it was looking for the candidate with the best "qualifications and fit"–with an emphasis on supervisory experience, *id.* at 81 (Rients deposition)–for the position of Cooler Service Supervisor, *id.*

- 10 -

at 62. Thus, Coca-Cola claims Voltz was not selected to be a Cooler Service Supervisor in either 1996 or 1998 because he did not have the best "qualifications and fit" for the position and not because he was African American.

Selecting the best candidate for the job is a valid, nondiscriminatory justification for not promoting Voltz. *Simms v. Oklahoma*, 165 F.3d 1321, 1328 (10th Cir. 1999) (finding that promoting a candidate that had more experience then the plaintiff is a valid nondiscriminatory justification for the challenged employment decision). Therefore, Coca-Cola has satisfied its burden under the second step of the *McDonnell Douglas* framework.

3

*Whether the nondiscriminatory reason is a pretext*

The third, and final, step of the *McDonnell Douglas* framework shifts the burden back to the plaintiff to show that the nondiscriminatory reason proffered by the defendant is a pretext. *McDonnell Douglas*, 411 U.S. at 804. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3rd Cir. 1996)). "Mere conjecture that [the] employer's explanation is a pretext for

intentional discrimination is an insufficient basis for denial of summary judgment."
*Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

As mentioned above, the employer's proffered nondiscriminatory reason for its decision not to promote Voltz was that he did not have the best "qualifications and fit" for the position. Voltz makes two arguments in support of his claim that this proffered nondiscriminatory reason is a pretext: (1) that there were procedural irregularities in the selection process and (2) Coca-Cola in general discriminates against minorities in its hiring practices.

Voltz's first argument is that there were numerous procedural irregularities in Coca-Cola's selection process for the Cooler Service Supervisor. Specifically, Voltz claims: (1) that another candidate for Cooler Service Supervisor, who was Caucasian, received high marks for supervisory experience even though he had no experience at Coca-Cola; (2) his experience as "lead person" in his department was not given sufficient weight; and (3) that the person who conducted Voltz's interview did not have formal training in how to use a form that was filled out during candidate interviews. These irregularities, however, do not satisfy Voltz's burden to show pretext.

Coca-Cola asserts that Voltz was not promoted because he did not have the best "qualifications and fit" for the position of Cooler Service Supervisor. Thus, to show this justification was pretext, Voltz needed to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in that justification. *Morgan*, 108 F.3d

at 1323. Voltz's first claim–that another candidate for Cooler Service Supervisor erroneously received high marks for supervisory experience–fails to show pretext because it is untrue. That other candidate, Caucasian Tony Cobb, was given high marks for supervisory experience based upon his experience as a Sargent in the miliary. Appellant App. at 162. Coca-Cola can rationally value supervisory experience in the military and it is not the province of this court to determine "whether an employer acted prudently or imprudently in its hiring decisions." *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 248 (10th Cir. 1993). Further, Cobb, like Voltz, did not receive the position of Cooler Service Supervisor. Appellant App. at 4. Thus, how Coca-Cola weighed the qualifications of someone else who did not receive the position has no relevancy as to whether Coca-Cola actually selected the candidate with the best "qualifications and fit" for the position.

Similarly, Voltz's second claim–that his experience as "lead person" was not given enough weight–fails to show pretext because "an employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute." *Simms*, 165 F.3d at 1329 (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996) (alterations in original) (quotation marks omitted)). Where "two candidates are equally qualified for the position and neither is *clearly* better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." *Id.* at 1330 (emphasis added). Voltz has similar qualifications–setting aside his poor interview, Appellant App. at 90, and his discharge from his previous supervisory position due to

- 13 -

misconduct, *id.* at 46–to the persons who did receive the position of Cooler Master Supervisor in 1996, Hamilton, and 1998, Toth. While Voltz had experience as "lead person" since 1996, *id.* at 144, and favorable evaluations as Cooler Technician since 1988, *id.* at 157, Hamilton had several years of supervisory experience as a "Conventional Route Supervisor" with Coca-Cola, *id.* at 94 and Toth had several years of supervisory experience as a Vending Repair Supervisor for Coca-Cola from 1981-1988 and as a Shop Supervisor for Action Enterprises from 1988-1990, *id.* at 101. Therefore, even if Voltz's experience as "lead person" is considered supervisory, his qualifications are not "clearly better" then either Hamilton or Toth. As such, it was within the discretion of Coca-Cola to choose among them. *Simms,* 165 F.3d at 1330.

Finally, Voltz's third claim–that Shelly Shultz, who conducted Voltz's interview in 1998, did not have formal training in how to use a form that was filled out during candidate interviews–fails to show pretext for two reasons. First, the failure to formally train the interviewer affected all candidates equally. "[W]here the alleged procedural irregularity disadvantaged all potential applicants for a promotion, rather than just members of a protected class, [the procedural irregularity itself] does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination." *Kendrick v. Penske Transp.Serv., Inc.*, 220 F.3d 1220, 1230 n.8 (10th Cir. 2000). Here, even if Shultz incorrectly used the form during interviews in 1998, there is no showing that she

- 14 -

incorrectly used the form only as to Voltz. Thus, to the extent that there were irregularities in the interview process, those irregularities applied to all candidates equally and not just to members of a protected class.

Second, the failure to formally train Shultz in the use of a form did not transform the selection process into a purely subjective evaluation. Where a company proffers the nondiscriminatory justification of hiring the most qualified employee but uses solely subjective criteria, then summary judgment is inappropriate. *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1218 (10th Cir. 2002). That is not, however, this case. Here, the evidence shows that Coca-Cola relied upon the objective qualification of the amount of supervisory experience possessed by each candidate. Appellant App. at 62 (Paxton deposition); *Id.* at 81 (Rients deposition). Therefore, while some subjective criteria may have been used, "the relevant abilities were articulated in guidelines with reasonable specificity." *Colon-Sanchez v. Marsh*, 733 F.2d 78, 82 (10th Cir. 1981). As a consequence, the fact that Shultz lacked formal training does not show pretext.

In addition to evidence of procedural irregularities, Voltz also presents three other pieces of circumstantial evidence that he claims show discrimination: (1) statistical evidence that shows only four African Americans were hired for supervisory positions at Coca-Cola's Denver facility; (2) a portion of a report prepared as part of Coca-Cola's affirmative action program that indicated an underutilization of minorities; and (3) allegedly racist comments made by Rients. None of these pieces of evidence, however,

sufficiently raises an inference of discrimination.

The first piece of evidence Voltz advances is statistical evidence showing that, between January 1997 and December 2000, only four of the fifty seven open supervisory positions were filled by African Americans. Appellant App. at 69. These statistics fail to raise an inference of discrimination for two reasons. First, the statistics Voltz cites are too amorphous from which an inference of discrimination can be drawn. While "statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class," that statistical data must "focus on eliminating nondiscriminatory explanations for the disparate treatment by showing *disparate treatment between comparable individuals*." *Cone v. Longmount United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (emphasis added). Here, Voltz presents no evidence of the qualifications for the other minority candidates or the criteria used to fill those other positions. Thus, Voltz has not suggested a congruence between his situation and those of the candidates described in the statistics he advances.

Second, the statistical evidence Voltz cites does not show discrimination even if one assumes all other African American candidates were comparable to Voltz. The statistical evidence shows that, between January 1997 and December 2000, 23.94 percent (62 of 259) of applicants for supervisory positions were minorities while 26.32 percent (15 of 57) of the available supervisory positions were filled by minorities. Appellant

App. at 69. The statistical evidence also shows that, during that same period, 11.97 percent (31 of 259) of applicants for supervisory positions were African American while 8.77 percent (5 of 57) of the available supervisory positions were offered to African Americans.[5] *Id.* 70. In other words, the percentage of minority supervisors mirrored the number of minority candidates and the percentage of African American supervisors mirrored the number of African American candidates. Therefore, the statistical evidence advanced by Voltz shows equal treatment of minorities and African Americans and cannot support an inference of discrimination.

Similarly, the second piece of evidence Voltz advances, a portion of a report prepared as part of Coca-Cola's affirmative action program, also does not give rise to an inference of discrimination. The portion of the report Voltz emphasizes states:

> At this point, we are underutilized in this job group [supervisory positions] by three minorities. Since last year's plan, there were two minorities who voluntarily resigned from the Company and subsequently, this job group. There were eleven total employment actions in this job group, (including eight new positions), none of the placements were minority.

*Id.* at 195. This section of the report, however, merely states that there are fewer minorities in supervisory positions than Coca-Cola would like. This is not evidence of discrimination. Title VII does not mandate that an employer hire a certain number of minorities; rather it "prohibits only intentional discrimination based upon an employee's

---

[5]One African American candidate for a supervisory position was selected but declined the promotion. Appellant App. at 70.

protected class characteristics." *Kendrick*, 220 F.3d at 1232.  Indeed, the affirmative action report cited by Voltz is evidence of a conscious effort on the part of Coca-Cola *not* to discriminate.  Appellant App. at 195 (noting that the report "increased awareness of minority underutilization" and that this underutilization will "be addressed throughout the coming year").  Therefore, this evidence cannot give rise to an inference of discrimination.

Finally, Voltz cites various discriminatory statements.  Specially, Voltz complains of four incidents: when Rients called Voltz "Black Bart;" when Rients referred to an African American female employee as "the black girl;" when Rollie Lockhart, a manager, asked Voltz whether he had a GED; and when Rients told a worker "your people make really good Mexican food."  None of these incidents, however, gives rise to an inference of discrimination.

Discriminatory comments by the decision maker in a Title VII case are properly considered circumstantial evidence of discrimination only where the statements are in fact discriminatory and the plaintiff can demonstrate a nexus between the statements and the challenged employment decision.  *Cone,* 14 F.3d at 531.  For a comment to be considered discriminatory, it must, at the very least, relate to the protected class of the plaintiff.  *Id.* Here, none of the first three comments satisfy this requirement since they do not relate to Voltz's race.  The first comment, calling Voltz "Black Bart," was a reference to a cartoon character based upon a Caucasian individual and was motivated by Voltz's use of a

cowboy hat and cigar rather then his race. Appellant App. at 104. Similarly, the second comment, referring to a Coca-Cola employee as "the black girl," was made to identify a female African American employee to another employee who did not know her name. *Id.* at 51. Thus, Reints' statement, while offensive to Voltz, is not of sufficient gravitas to be considered circumstantial evidence of discrimination. Likewise, the third comment, asking Voltz whether he had a GED, was not discriminatory as it was a valid question in response to Voltz's inquiry into a promotion that had a GED or high school diploma as a prerequisite. *Id.* at 52.

The fourth comment, where Rients told a worker "your people make really good Mexican food," does relate to race, though not to Voltz's particular race. However, that comment was not made in connection with any hiring decision. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus . . . ." *Cone,* 14 F.3d at 531. Therefore, this isolated remark is insufficient to raise an inference of discrimination.

Although we have concluded that Voltz's evidence of procedural irregularities are insufficient to show pretext, and his other circumstantial evidence is insufficient to raise an inference of discrimination, our inquiry is not at an end. The ultimate question on summary judgment in a Title VII case is whether the plaintiff has presented sufficient evidence such that there is a genuine issue of material fact pertaining to whether the plaintiff's race actually motivated the allegedly discriminatory conduct. *Reeves,* 530 U.S.

at 141; Fed. R. Civ. P. 56(c). This question cannot be answered by looking at the plaintiff's evidence in a piecemeal manner. *Simms,* 165 F.3d at 1330 (noting that the court must consider the plaintiff's "circumstantial evidence in its totality"). Nor can this question be answered if our analysis is excessively parochial.

The final part of our analysis evaluating the sufficiency of circumstantial evidence in employment discrimination cases –the third step of the *McDonnell Douglas* framework –requires the plaintiff to show the nondiscriminatory reason proffered by the defendant is a pretext. *McDonnell Douglas*, 411 U.S. at 804. The gravamen of a showing of pretext is presenting sufficient evidence such that a "reasonable factfinder could rationally find [the proffered reason] unworthy of *credence*." *Morgan,* 108 F.3d at 1323 (emphasis added). A plaintiff can make such a showing in ways other then by presenting sufficient evidence to find the employer's justification cannot be true. In other words, a plaintiff is not required to present sufficient evidence to show that if the employer actually used its proffered justification, the plaintiff would have received a favorable employment decision. Rather, the plaintiff need only present sufficient evidence such that a rational factfinder could find the proffered justification was not the real reason for the challenged employment action. *Id.*

Therefore, a plaintiff can show the proffered nondiscriminatory justification that the plaintiff was not the most qualified candidate is a pretext by either: presenting evidence sufficient to show he was the "clearly better qualified" candidate, i.e., that the

proffered justification could not be true, *Simms,* 165 F.3d at 1330, or presenting evidence that he was comparably qualified accompanied by other evidence of discrimination, e.g., racially derogatory remarks, such that a rational jury could find the proffered justification unworthy of credence, *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1178 (7th Cir. 2001).

As detailed above, Voltz has shown he was a qualified but not the "clearly better qualified" candidate for position of Cooler Service Supervisor. Therefore, Coca-Cola is appropriately entitled to summary judgment unless Voltz's other evidence of discrimination is sufficient to allow a reasonable factfinder to find that Coca-Cola's proffered justification that Voltz was not the most qualified candidate is so plagued by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" as to be unworthy of credence. *Morgan,* 108 F.3d at 1323. Voltz has not made such a showing here.

As detailed above, the procedural irregularities cited by Voltz are "trivial or accidental or [can be] explained by a nondiscriminatory motive [and] will not sustain a claim of pretext." *Kendrick,* 220 F.3d at 1232. "The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality." *EEOC v. Flasher Co.*, 986 F.2d 1312, 1319 (10th Cir. 1992). Similarly, the other pieces of circumstantial evidence of discrimination presented by Voltz are too insubstantial to support an inference of discrimination. Therefore, the sum of Voltz's evidence simply does not amount to more

than a scintilla of evidence in support of a finding of pretext and Coca-Cola is entitled to summary judgment as to the disparate treatment claim. *Simms,* 165 F.3d at 1326.

B

*Disparate Impact*

Title VII also prohibits "employment practices that are fair in form, but discriminatory in operation." *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1312 (10th Cir. 1999). Such employment practices give rise to a cause of action under a disparate impact claim under Title VII. 42 U.S.C. § 2000e-2(k)(1)(A)(i). Disparate impact claims are analyzed in a three step burden shifting framework. First, the burden rests with the plaintiff to establish a prima facie case of disparate impact by showing that a "specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Id.* In the second step, "the burden shifts to defendant to show that the challenged practice is job related and consistent with business necessity." *Bullington,* 186 F.3d at 1312. Finally, the plaintiff is then required to "suggest an alternative employment practice that serves the employer's legitimate employment goals yet lacks the undesirable discriminatory effect." *Id.*

In this case, the district court dismissed Voltz's disparate impact claim for failure to establish a prima facie case. Specifically, the district court concluded that Voltz had failed to identify any specific employment practice or policy and failed to show a disparate impact. On appeal, Voltz does not identify, and we cannot find, any error in this

- 22 -

ruling by the district court.  An essential element in a prima facie case of disparate treatment is identification of the "specific employment practice" being challenged. 42 U.S.C. § 2000e-2(k)(1)(B)(i).  Here, Voltz never identifies an employment practice and instead makes the general allegation that "Coca-Cola's employment and hiring practices do not serve any legitimate goal other than unlawful discrimination."  Appellant App. at 5 (Voltz's complaint).  This is insufficient to establish a prima facie case of disparate impact.

Further, even if Voltz had identified a specific nefarious employment practice, he has not shown disparate treatment.  Here, Voltz relies upon statistical evidence showing that only four African Americans received supervisory positions between January 1997 and December 2000 to show disparate impact.  As detailed above, however, these statistics actually show that minorities and African Americans were not subject to disparate treatment.  Therefore, Voltz has failed to make out a prima facie case of disparate impact and the district court was correct in granting Coca-Cola summary judgment on the disparate impact claim.

**AFFIRMED.**

ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge