**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TAMAR GREENBERG, individually
and as personal representative of the
Estate of Lawrence M. Greenberg,
deceased,

        Plaintiff-Appellant-
        Cross-Appellee,

v.

COMERICA BANK, as personal
representative of the Estate of Julius
Greenberg, M.D.;

        Defendant-Appellee-
        Cross-Appellant,

and

ALLERGY GROUP, P.C.,

        Defendant.

Nos. 98-1349 & 98-1366
(D.C. No. 95-B-663)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate records, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

Tamar Greenberg appeals from the district court's grant of summary judgment to defendant Dr. Julius Greenberg on claims of medical negligence, breach of fiduciary duty, and loss of consortium. Dr. Greenberg filed a conditional cross-appeal challenging the district court's denial of his motion to dismiss for lack of venue. [1]

**Appeal No. 98-1349**

*Introduction*

Lawrence Greenberg and his wife, Tamar Greenberg, originally brought this action against Lawrence's adoptive father, Dr. Julius Greenberg. [2] Their complaint alleged that, as a result of Dr. Greenberg's negligent prescription and dispensation of controlled substances to Lawrence over a period of almost thirty

---

[1]     Defendant Allergy Group, P.C. was dismissed by the district court on summary judgment. Appellant does not challenge the district court's ruling in this respect.

[2]     Both Lawrence Greenberg and Dr. Julius Greenberg died during the pendency of this appeal. Personal representatives Tamar Greenberg and Comerica Bank have been substituted for Lawrence Greenberg and Dr. Greenberg, respectively.

years, beginning when he was still a minor, Lawrence Greenberg became addicted to benzodiazepines. The complaint set out claims for medical negligence, outrageous conduct, breach of fiduciary duty, and loss of consortium, and sought both compensatory and punitive damages.

Dr. Greenberg moved for summary judgment based on two releases signed by Lawrence on March 1, 1995, purporting to discharge Dr. Greenberg from any liability for medical malpractice, negligence, and "any reason or any matter, cause or thing" occurring before the date of the releases. Appellant's App. at 122-23. Lawrence signed these releases in exchange for the stated consideration of $7,500; appellant alleges there was an unstated additional consideration of 100 Xanax pills.

The district court initially ruled that the releases were contrary to public policy and were also adhesion contracts and therefore unenforceable. *See id.* at 56.[3] Upon reconsideration, however, the court determined that the releases were valid and enforceable and precluded all of appellant's remaining claims. *See id.* at 71, 73. The district court granted summary judgment to Dr. Greenberg and dismissed the action. *See id.* at 74.

---

[3] The court granted summary judgment to Dr. Greenberg on the claims of outrageous conduct and punitive damages, rulings appellant does not challenge on appeal.

Our jurisdiction over this appeal arises from 28 U.S.C. § 1291.  "We review the district court 's grant of summary judgment de novo, applying the same legal standard used by the  district court ." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.* , 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999).  The parties agree, as did the  district court , that Michigan law applies to this diversity-based action.  On appeal, appellant contends that 1) the releases are unenforceable as contracts of adhesion which were signed under duress and because of illegality of consideration and purpose, 2) the releases were a breach of Dr. Greenberg's fiduciary duty, and 3) the loss of consortium claim was not extinguished by the releases.  Appellee asserts the following defenses:  1) appellant's claims are barred by Michigan's wrongful conduct rule, 2) the releases are valid and enforceable, 3) appellant cannot challenge the releases because the consideration for them was not returned, 4) the releases are not contracts of adhesion or illegal, and 5) appellant's loss of consortium claim is derivative of the substantive claims and therefore barred by the releases.

*Claims of Medical Negligence and Breach of Fiduciary Duty*

We agree with appellee's third argument.  Michigan law is clear that, absent return of the consideration, a litigant may not challenge the validity of the signed releases.  *See Stefanac v. Cranbrook Educ. Community* , 458 N.W.2d 56, 60

(Mich. 1990). It is undisputed that Lawrence did not return the consideration prior to commencing suit. *Cf. Davis v. Bronson Methodist Hosp.*, 406 N.W.2d 201, 202 (Mich. Ct. App. 1986). Appellant contends that this defense is unavailable because the illegality of the releases leaves the court without authority to enforce them despite failure to return the consideration. Appellant also asserts that Lawrence's addiction and Dr. Greenberg's fiduciary duty to Lawrence as both a parent and physician constitute exceptional circumstances such that the failure to return the consideration should not preclude her suit. Because we conclude that the releases are not illegal and that neither the alleged illegal consideration nor Dr. Greenberg's alleged breach of his fiduciary duties affect the requirement of return of consideration, we reject these arguments. [4]

First, we agree with the district court's reconsidered decision that the releases at issue here are not contracts of adhesion. [5] Michigan establishes a

---

[4] We note that our review of the issues presented was largely unaided by appellant's appendix, which contains only a few pages of each of the pleadings listed in its Table of Contents. Further, although counsel identified where the major issues were ruled upon, he did not tell us where the issues were raised or provide citations to the record for reference. Counsel is reminded of its obligations to "cite the precise reference in the record where [an] issue was raised," 10th Cir. R. 28.2(C)(2), and to "file an appendix sufficient for considering and deciding the issues on appeal," 10th Cir. R. 30.1(A)(1).

[5] Appellee contends that appellant may not argue the releases were contracts of adhesion because appellant did not make that contention to the district court. However, when, as here, a court disposes of a case on a point not argued by the parties, it is axiomatic that the parties may challenge that ruling and the court's

(continued...)

two-prong test for determining whether a contract is one of adhesion: "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" *Barck v. Grant State Bank*, 357 N.W.2d 872, 874 (Mich. Ct. App. 1984). In looking at the nonconsensual nature of adhesion contracts (the first prong above), the Michigan Supreme Court has described the characteristics of a contract of adhesion as: "the parties to the contract were of unequal bargaining strength; the contract is expressed in standardized language prepared by the stronger party to meet his needs; and the contract is offered by the stronger party to the weaker party on a 'take it or leave it' basis." *Morris v. Metriyakool*, 344 N.W.2d 736, 756 (Mich. 1984) (further citation omitted). The court also emphasized that there is generally no opportunity for the weaker party to negotiate and the circumstances are such that the weaker party "cannot obtain the desired product or service except by acquiescing in the form agreement." *Id*. at 742.

Here, appellant appears to contend that Lawrence was the weaker party to the releases, due to his addiction to the alleged additional consideration of 100 Xanax pills and an alleged threat by Dr. Greenberg that he would cut off

---

[5](...continued)
underlying analysis on appeal.

-6-

Lawrence's drug supply should Lawrence sue him. However, appellant admits that Dr. Greenberg was not the only source of supply for Lawrence's addiction. *See* Appellant's Br. at 11. Further, even if it were established that Lawrence signed the releases to obtain the 100 Xanax pills or to ensure that Dr. Greenberg would continue to provide drugs to him, none of the remaining factors in Michigan's characterization of an adhesion contract are present. The releases in question were not standardized forms and were not offered by Dr. Greenberg on a "take it or leave it" basis. *See Morris*, 344 N.W.2d at 756. In fact, the record is undisputed that it was Lawrence who initially threatened to sue Dr. Greenberg and then demanded money in exchange for his promise not to sue. Further, the record is undisputed that Lawrence had the release forms prepared for his own use and brought them to a meeting with Dr. Greenberg. Under these circumstances, appellant has not established the adhesive nature of the releases.

Because both prongs of the Michigan test must be present, we need not examine appellant's arguments that the releases are substantively unreasonable in our determination whether the releases were contracts of adhesion. However, appellant has also challenged appellee's invocation of the failure to return the consideration defense based on her argument that the releases are illegal in purpose and consideration. Appellant argues that because Dr. Greenberg "imposed" the releases on Lawrence "as a condition of further provision of

drugs," the releases are illegal in purpose. *See* Appellant's Br. at 13. She also argues that because Dr. Greenberg gave Lawrence 100 Xanax pills at the time of signing the releases, and because distribution of controlled substances under these circumstances is illegal, the releases are also illegal in consideration.

We agree with the district court that, on their faces, the releases are not illegal in purpose. They seek only to release appellee's potential liability for past wrongful conduct, an agreement that is not only cognizable but favored under Michigan law. *See Stefanac*, 458 N.W.2d at 60. [6] The existence of past illegal conduct which might also be subject to criminal liability does not make the releases themselves illegal or unenforceable. *Cf. People v. Cole*, 84 N.W.2d 711, 721-22 (Mich. 1957) (noting that settlement of civil liability does not preclude criminal prosecution for underlying conduct). Further, without determining whether the parol evidence rule would allow consideration of the 100 Xanax pills as an additional, illegal consideration for the releases, we agree with appellee that even were the presence of an illegal consideration established it would not excuse Lawrence from the obligation to return the stated monetary consideration as a precondition to suit. The only two stated exceptions to Michigan's requirement

---

[6] Because these releases seek to discharge liability solely for past conduct, they differ from exculpatory agreements absolving parties from medical negligence before medical treatment, which are prohibited under Michigan law. *See Cudnik v. William Beaumont Hosp.*, 525 N.W.2d 891, 896 n.8 (Mich. Ct. App. 1994).

that consideration be returned before a release can be challenged are 1) a waiver of the plaintiff's duty to return the consideration by the defendant, and 2) fraud in the execution of the releases. *See Stefanac*, 458 N.W.2d at 60. The alleged illegal consideration under the facts of this case does not implicate either of these exceptions. We also note that the releases are supported by an express, valid, monetary consideration, the payment of which is undisputed.

Finally, we reject appellant's contentions that Lawrence's addiction and Dr. Greenberg's alleged fiduciary duties to Lawrence are exceptional circumstances which preclude use of this defense. Appellant has pointed to no authority where unusual circumstances have been recognized as the basis for an exception to the defense, and we see nothing in Michigan's case law which would support such an approach.

*Claim for Loss of Consortium*

Although we affirm the district court's dismissal of the substantive claims against appellee, we disagree with the district court's apparent grant of summary judgment on appellant's loss of consortium claim. [7] Appellant contends that her loss of consortium claim, although derivative of Lawrence's claims, is

---

[7] Contrary to appellant's assertion, *see* Appellant's Br. at 16, this claim was not actually addressed by the court in its final summary judgment order. *See* Appellant's App. at 69-75. We assume, however, based on the court's ultimate denial of Lawrence's substantive claims against Dr. Greenberg and its dismissal of the action, that the court also meant to deny the loss of consortium claim on the basis of authority cited in its first order. *See id.* at 64.

independent of them and is not precluded by the releases. As appellee points out, Michigan authority states that a loss of consortium claim rises or falls with the success of the injured party's claims from which it is derived, *see Long v. Chelsea Community Hosp.*, 557 N.W.2d 157, 162-63 (Mich. Ct. App. 1996); *Berryman v. K Mart Corp.*, 483 N.W.2d 642, 646 (Mich. Ct. App. 1992). Nonetheless, other authority indicates that this concept is not applicable when, as here, the claims of the injured party have been released. *See Oliver v. Department of State Police*, 408 N.W.2d 436, 438-39, 440 (Mich. Ct. App. 1987); *Oldani v. Lieberman*, 375 N.W.2d 778, 780-83 (Mich. Ct. App. 1985). We agree that Michigan law supports appellant's position. However, because the record with respect to this claim is not developed, we express no opinion about the validity of this claim other than to rule that, on the sparse facts presented on appeal, it is not foreclosed by the releases as a matter of law. *See Oldani*, 375 N.W.2d at 780.

Further, we choose not to consider whether Michigan's wrongful conduct rule precludes appellant's loss of consortium claim, an argument raised by appellee for the first time on appeal. While this court can affirm on grounds not relied on by the district court so long as the record is sufficient to permit conclusions of law, *see United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994), the decision whether to resolve an issue raised for the first time on appeal is left to our discretion. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215,

-10-

1229 (10th Cir. 1996). Because the record is not developed as to the underlying facts that bear upon appellant's loss of consortium claim, facts which are also pertinent to a determination whether the wrongful conduct rule applies here, we remand the issue to the district court for further proceedings.

**Appeal No. 98-1366**

*Cross-Appeal of Venue Ruling*

We have not affirmed the district court's decision in all respects and are therefore compelled to consider appellee's conditional cross-appeal challenging the district court 's denial of appellee's motion to dismiss for improper venue or to transfer venue. The district court concluded that venue was proper in Colorado, pursuant to 28 U.S.C. § 1391(a)(3), because Dr. Greenberg had had sufficient contacts with that state to justify personal jurisdiction over him. The court did not consider appellee's alternative proposition, that venue in Colorado was also improper under 28 U.S.C. § 1391(a)(2), which requires that "a substantial part of the events or omissions giving rise to the claim" occur in the venue district. *Id.* The court also denied appellee's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Appellee contends the first ruling was legal error in light of language in § 1391(a)(3) that this provision is only to be relied upon to establish venue "if there is no district in which the action may otherwise be brought." *Id.*

Appellant appears to concede the point, and we agree that this ruling of the district court was error. Therefore, we vacate the district court's ruling on appellee's motion to transfer venue.

**Conclusion**

In appeal No. 98-1349, judgment of the United States District Court for the District of Colorado is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this order. In appeal No. 98-1366, we VACATE the district court's ruling on appellee's motion to transfer venue.

Entered for the Court

Michael R. Murphy
Circuit Judge