**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DARRELL WELLS,

     Plaintiff - Appellant,

v.

US FOODSERVICE, INC.; JOHN DOE
I; JOHN DOE II,

     Defendants - Appellees.

No. 03-2125
(D.C. No. CIV-02-185-RLP)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **McWILLIAMS**, and **PORFILIO**, Circuit Judges.

     The sole issue remaining in this appeal is whether the district court correctly held

the New Mexico Workers Compensation Act (the Act) provides the exclusive remedy for

this personal injury action. N.M. Stat. Ann. §§ 52-1-1 to 52-1-68. It did, and we affirm

its grant of summary judgment to US Foodservice, Inc., on the ground that its employee

---

     [*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

failed to allege facts bringing his claim within the ambit of *Delgado v. Phelps Dodge Chino Mine*, 34 P.3d 1148 (N.M. 2001).

Darrell Wells was a truck driver for US Foodservice, Inc., a wholesale food supplier. On February 16, 1999, a truck with a trailer loaded by a Foodservice employee in Lubbock, Texas, and driven by a Lubbock shuttle driver, arrived in Albuquerque, New Mexico. There, Mr. Wells picked up the trailer and began delivering its contents to Foodservice customers in Albuquerque and Santa Fe. At the first delivery stop in Albuquerque, he raised the trailer door only high enough to remove one box, and completed that delivery. At the next stop in Santa Fe, several boxes of products which had fallen inside the trailer fell to the ground as he opened the trailer door. Without moving these boxes aside, Mr. Wells began unloading and delivering fifteen boxes into the facility, maneuvering around the boxes strewn on the ground. As Mr. Wells bent over to pick up another box, a case of Tabasco sauce plummeted from the top of the load in the trailer and struck him on the back, seriously injuring him.

Mr. Wells filed this diversity action for personal injuries, fraud, and prima facie tort against Foodservice; John Does I and II, the Lubbock employees who loaded and drove the trailer (Foodservice, collectively); the US Fidelity and Guaranty Company; and the St. Paul Companies. All Defendants moved for summary judgment. After Mr. Wells failed to respond to these latter insurers' motion for summary judgment, the court dismissed the complaint against them.

In the district court, Mr. Wells' diversity action in negligence sought to remove his recovery from under the Act by contending Foodservice's failure to provide a load lock[1] on the trailer to prevent the cargo from shifting was an intentional omission under 49 C.F.R. § 393.100 of the Federal Motor Carrier Safety Administration, Department of Transportation Regulations (the Rules).[2] The Rules require, in part, a "tie down assembly" on all trucks, truck tractors, semitrailers, full trailers, and pole trailers to prevent loads from shifting and falling. 49 C.F.R. § 393.100.[3] There was no tie down assembly or load lock on Mr. Wells' truck. Thus, this wilful act or omission, Mr. Wells contended, fell within the bounds of *Delgado*, 34 P.3d at 1148, and permitted him to seek recovery outside of the exclusive remedy provided by the Act. The court disagreed and granted Fordservice's motion for summary judgment.

---

[1] Foodservice's division president, Larry Luman, testified a load lock is "an aluminum bar that can be configured several different ways. Some of them have rectangular loops on them, rubbery ends on them, spring tension on it so you can either set it up vertically or horizontally in your trailer to try to prevent your load from shifting."

[2] 49 CFR § 393.100(c) states:
> Prevention against shifting of load. Cargo must be contained, immobilized or secured in accordance with this subpart to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected.

[3] Other options under the Rule require equipping the vehicle with "sides, side-boards, or stakes, and a rear endgate, endboard, or stakes," § 393.100(b)(1); or "at least one tiedown assembly that meets the requirements of Sec. 393.102. . . ." § 393.100(b)(2).

We review the grant of summary judgment de novo, applying the same legal standard as did the district court. *Truck Ins. Exchange v. MagneTek, Inc.,* 360 F.3d 1206, 1214 (10th Cir. 2004). Summary judgment is then appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party, the nonmoving party must still present facts susceptible of permitting a reasonable jury to find in its favor. *Truck Ins.,* 360 F.3d at 1214 (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

In its order, the district court quoted from Foodservice's motion for summary judgment certain facts Mr. Wells did not dispute:

> Even at this point, [Plaintiff] did not re-stack the load or otherwise take steps to secure it. Instead, he commenced deliveries in and out of Pinon Hills, delivering some boxes that had spilled on the ground and also climbing in and out of the trailer to retrieve and deliver other boxes of products.
>
> [Plaintiff] alleges that at some point, after he had delivered a large quantity of the order to Pinon Hills, he was leaning over to pick up a box from the ground when a case of [T]obasco [sic] sauce fell from the top of the load in the truck and st[r]uck him in the back injuring his back.

The court then applied the analysis set forth in *Delgado*, which revised the New Mexico test for holding an employer liable for intentionally injuring his worker. 34 P.3d at 1156. Under that test, the New Mexico Supreme Court held "willfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury." *Id.*

On each facet of the *Delgado* test, our de novo review confirms Mr. Wells' factual showing and legal argument fail. First, Mr. Wells ignores 49 C.F.R. § 392.9 of the Rules which catalogs a series of safe loading requirements a driver must also follow. These include "examin[ing] the vehicle's cargo and its load-securing devices within the first 25 miles after beginning a trip and cause any adjustments to be made to the cargo *or* load-securing devices . . . *as may be necessary* to maintain the security of the commercial motor vehicle's load; and reexamin[ing] the . . . vehicle's cargo and its loading-securing devices periodically during the course of transportation and cause any adjustments to be made to the cargo or load-securing devices . . . as may be necessary." § 392.9(b)(2), § 392.9(b)(3) (emphasis added).

Second, Mr. Wells testified he did not know if it was a requirement to inspect the load before driving but characterized that action as "something you did to basically save your own neck . . . to make sure it's loaded right, make sure you've got the right product on your trailer before you leave to go 230 miles away." Not only did Mr. Wells state he did not check or restack the load after removing product at Honeywell, the first stop, but he also stated he did not recall whether he even inspected the load on the day of the accident. When boxes fell out of the truck at the Pinon Hills stop in Santa Fe, Mr. Wells continued to unload and walk around the fallen boxes but did not restack the load that had already evidenced signs of instability.

Further, Mr. Wells testified that a load lock would not prevent products from falling off the top of a load or keep a load from shifting from side to side.[4] Instead, Mr. Wells agreed a load lock primarily prevented products from sliding down to the end of the truck. An improperly stacked load with heavier boxes placed on top of lighter boxes, as he noted, or one in need of restacking would, thus, by his own testimony, not be stabilized by a load lock. In the face of this evidence coupled with his statement he did not inspect or recheck his cargo, Mr. Wells' contention Foodservice's failure to equip the truck with a load lock, admittedly only one of several requirements for the safe transportation of

---

[4] The record contains testimony of other truckers who stated they did not use load locks, or that load locks were available but often not utilized because they did not fully keep cargo from falling. While witnesses testified a load lock would more likely be used on cargo placed on pallets, Mr. Wells' cargo on the day of the accident was not stacked on pallets.

cargo, must fail.  As Foodservice counsel stated in oral argument, "This case is so not *Delgado*."

Although Mr. Wells admits he did not inspect the load when he began driving or restack the load as he either observed boxes shifting or removed products, he contends these actions are relevant only to apportion fault.  At the same time, however, he insists only Foodservice's omission produced the injury.  Instead, *Delgado* requires the employer engage in *intentional conduct* that proximately causes the injury to remove the action from redress under the Act.  See also, *Cordova v. Peavey Co.*, 273 F. Supp. 2d 1213 (D. N.M. 2003).  Under no view of the evidence or the Rules can Mr. Wells satisfy this showing on summary judgment.  At best, even under his theory, Defendants' conduct was negligent and not intentional.

Finally, because Mr. Wells failed to reply to the insurers' motion for summary judgment or assert the grounds before the district court upon which he should have been permitted to file a surreply, a third issue raised here, we have no record to review.  Mr. Wells' unsupported and untested assertions cannot fill that void.

    **AFFIRMED**.


                      ENTERED FOR THE COURT


                      John C. Porfilio
                      Senior Circuit Judge