**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BENNETT S. GODWIN,

               Plaintiff-Appellee,

v.

SOUTHWEST RESEARCH
INSTITUTE,

               Defendant-Appellant.

No. 06-4055

(D. Utah)

(D.C. No. 04-CV-00069-DAK)

**ORDER AND JUDGMENT**[*]

Before **HENRY, McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

    Bennett S. Godwin worked for Southwest Research Institute (SwRI) from

1989 until SwRI terminated him in 2003. Mr. Godwin, who was 57 when he was

fired, filed suit alleging that (1) SwRI violated his rights under the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and that (2)

the company terminated his employment to prevent him from receiving certain

benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.

§§ 1001-1461. The district court dismissed Mr. Godwin's ADEA claim because

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

he had failed to file a letter of intent with the Equal Employment Opportunity Commission (EEOC) within 300 days of his termination. SwRI won summary judgment on the ERISA claim because Mr. Godwin failed to produce evidence creating a genuine issue of material fact as to the legitimacy of SwRI's non-discriminatory reason for his termination. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and, for substantially the same reasons as those set forth in the district court's well-reasoned order, we affirm.

## I. Background

SwRI is an applied science and engineering research organization specializing in the formulation of courses and training materials for the military. Mr. Godwin's job at SwRI focused on creating graphics for use by other course developers in training manuals. Around 2001, SwRI began to experience a decrease in revenue. Mr. Godwin started working part-time in 2002 after he returned from a four-month leave of absence. During that same period, SwRI management noticed that the company's reliance on more sophisticated graphic art production techniques made many of Mr. Godwin's skills obsolete. His supervisor eventually suggested that he be terminated for lack of work.

## II. Discussion

### A. *Mr. Godwin's Age Discrimination Claim*

An ADEA plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. 29 U.S.C. § 626(d); *Bennett v.*

*Coors Brewing Co.*, 189 F.3d 1221, 1234 (10th Cir. 1999). When a plaintiff fails to meet that deadline, he may bring suit only if the requirement is waived or tolled. *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995). Since the deadline was not waived, Mr. Godwin urged the district court to toll the statute of limitations. We are persuaded that the district court did not abuse its discretion in refusing to do so. *Harms v. I.R.S.*, 321 F.3d 1001, 1006 (10th Cir. 2003) (reviewing the district court's decision not to apply equitable tolling for abuse of discretion).

Mr. Godwin received notice of his termination on February 27, 2003. He mailed the requisite letter on November 24, 2003, 270 days after his termination. Because he misaddressed the envelop, the EEOC did not receive his letter until February 6, 2004, 44 days after the 300 day statute of limitations had expired. Nevertheless, he contends that the district court should have tolled the statute of limitations because "[t]he loss of his EEOC submissions within the United States mail system was an extraordinary circumstance beyond [his] control." Aplt's Br. at 14. Our precedent requires that an ADEA plaintiff demonstrate "active deception" on the part of an employer, the EEOC, or the court. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (internal quotation marks omitted). Our review of the record confirms that "[t]here is no evidence in this case that Godwin's employer, the EEOC or the court is at fault. The undisputed evidence demonstrates that it was Godwin himself who misaddressed his correspondence

3

with the EEOC." Aplt's App. at 332 (Dist. Ct. Order, issued January 11, 2006). Hence, the district court did not abuse its discretion in refusing to employ equitable tolling.

## B. *Mr. Godwin's ERISA Claim*

Section 510 of ERISA, 29 U.S.C. § 1140, provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993). In order to prevail on his ERISA discrimination claim, Mr Godwin must prove that "his discharge was motivated by an intent to interfere with employee benefits protected by ERISA." *Id.*

We agree with the district court that the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), may be applied to a § 510 ERISA claim. *See Register v. Honeywell Federal Mfg. and Technologies, LLC*, 397 F.3d 1130, 1137 (8th Cir. 2005) (stating that "[c]laims brought under § 510 are analyzed under the *McDonnell Douglas* burden shifting framework"); *see generally*, *Phelps*, 991 F.2d at 649 (stating that a plaintiff asserting a § 510 claim must "prove by a preponderance of the evidence, that his discharge was motivated by an intent to interfere with employment benefits protected by ERISA"). Under the *McDonnell Douglas* framework, "[i]f plaintiffs

4

show a prima facie case of a violation of § 510, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for [the adverse employment decision]. If the defendant does so, the burden shifts back to the plaintiff [] to prove that the defendants proffered reason was pretextual." *Register*, 397 F.3d at 1137.

Here, Mr. Godwin is unable to point to any direct evidence of impermissible intent, and he therefore relies on circumstantial evidence. *Id*. Assuming arguendo that Mr. Godwin can establish a prima facia case of ERISA discrimination, SwRI has proffered a non-discriminatory reason for his termination. Namely, SwRI stated that it fired Mr. Godwin because his work was no longer an essential component of their production and because of an overall decline in the company's profitability. Thus, in order to defeat summary judgment, Mr. Godwin must demonstrate that there is a genuine issue of material fact as to whether SwRI's explanation for his termination is pretextual. *See* Fed. R. Civ. P. 56(c) (summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

When ruling on a summary judgment motion, we examine the evidence in the light most favorable to the non-moving party. *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006). Even so, our examination of the

5

record reinforces the district court's conclusion that "[t]he undisputed evidence demonstrates that Godwin was discharged due to a lack of work in his skill set." Aplt's App. at 333-34. "Godwin's duties were, over time, absorbed by other employees as the advance of technology empowered other employees to perform their own graphic art work." *Id*. at 333. Moreover, as the district court observed, "[t]here is also no real dispute that [Mr.] Godwin was the first of several employees who were part of an overall reduction in force of SwRI's Hill AFB office. Not only were four other employees also discharged, but eleven positions were left open by employees leaving voluntarily." *Id*.

Mr. Godwin emphasizes that SwRI hired "an age 20+ person named Drew Olson to fill the position of Technican [sic.]" Aplt's Br. at 28. Yet, Mr. Godwin does not contend that Mr. Olson was hired as his replacement. In fact, he concedes that the tasks assigned to Mr. Olson's position and his were not the same and that Mr. Olson's position was set at a different pay scale and status level. Thus, the essence of Mr. Godwin's contention is that SwRI should have given him an opportunity to take a demotion and perform different tasks. This argument fails because SwRI was under no obligation to offer Mr. Godwin a new position. This court's role "is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Srvs.*, 165 F.3d 1321, 1329 (10th Cir. 1999) (internal quotation marks

6

omitted).

Mr. Godwin also maintains that he was entitled to a position focused on training course development, despite the fact that Mr. Godwin's performance reports reveal that "his work in that area was not satisfactory." Aplt's App. at 328. Nevertheless, Mr. Godwin states that he "*can* . . . produce evidence that his evaluations under SwRI's RIF criteria were deliberately falsified or manipulated so as to effect his termination or to otherwise adversely alter his employment status . . . " Aplt's Br. at 29-30 (emphasis supplied). This is an effort to create a genuine issue of material fact with regard to Mr. Godwin's less than satisfactory performance evaluations. However, this is a summary judgment motion, not a motion to dismiss for failure to state a claim. While the latter requires a court to take all allegations as true, the former demands that litigants produce some evidence to show that there are factual disputes a court should reserve for a jury. Mr. Godwin has failed to do so.

### III. Conclusion

Accordingly, we AFFIRM the district court's grant of summary judgment to SwRI.

Entered for the Court,

Robert H. Henry
Circuit Judge

7